IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

IN THE MATTER OF DELORA DENNIS, ROUTE 2, BOX 478, BREVARD, NORTH CAROLINA 28712, AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, COMPLAINANTS v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP COPORATION, RESPONDENTS AND MR. THOMAS W. McGOHEY AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, 505 CONNESTEE TRAIL, BREVARD, NORTH CAROLINA 28712, COMPLAINANTS v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS AND MRS. CARMELETTA MOSES, ROUTE 68, BOX 326, TUCKASEGEE, NORTH CAROLINA 28783, COMPLAINANT v. DUKE POWER COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS AND MR. FORREST COLE, ROUTE 63, BULL PEN ROAD, CASHIERS, NORTH CAROLINA 28717, AND OTHER CUSTOMERS OF HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, COMPLAINANTS AND NANTAHALA POWER & LIGHT COMPANY AND HAYWOOD ELECTRIC MEMBERSHIP CORPORATION, RESPONDENTS

No. 9310UC278

(Filed 19 April 1994)

1. Utilities Commission § 51 (NCI3d) — appellate review — standard of review

Appellate review of a Utilities Commission order is governed by N.C.G.S. § 62-94(b) and the order will not be upheld if error is found based on one of the grounds enumerated in that statute. Grounds for relief not specifically set forth in the notice of appeal filed with the Commission may not be relied upon in the appellate courts and, even when specific grounds are set forth, the scope of review may be determined only from an examination of the issues brought forward by the appealing party and the nature of the supporting contentions.

Am Jur 2d, Public Utilities §§ 276 et seq.

2. Utilities Commission § 55 (NCI3d) — appellate review — findings of fact — sufficient

The findings of the Utilities Commission were sufficient where the facts presented throughout the order provide the basis for concluding whether an action or decision was reasonable or prudent. N.C.G.S. § 62-79(a) mandates that the Commission find all facts which are essential to a determination of the issues before it and the failure to include all the necessary findings is an error of law and a basis for remand. However, the Commission is not required to set forth comments regarding every single fact or item of evidence presented

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

by the parties. While the Commission's summary of evidence, findings of fact, and conclusions of law in this case are mixed together, the mislabeling in itself does not require that the Commission's order be overturned.

**Am Jur 2d, Public Utilities §§ 286, 289.**

3. **Utilities Commission § 5 (NCI3d) — electrical utility — order requiring reassignment of customer — punitive — no authority**

The Utilities Commission exceeded its authority under N.C.G.S. § 62-110.2(d)(2) where a number of customers of Haywood Electric Membership Corporation requested reassignment to Duke Power Company, an investor owned public utility; the Commission held hearings and entered an order which summarized the testimony of 47 witnesses who testified against Haywood regarding poor service and their attempts to obtain relief; after a further hearing to consider a proposal from Duke Power, the Commission ordered the transfer of responsibility for furnishing electric utility service to M-B Industries, Haywood's largest commercial ratepayer, to Duke Power; the Commission ruled that Haywood's service to all complainants was inadequate and undependable and that its conditions of service and service regulations were arbitrary and unreasonably discriminatory; and it was apparent from the order that the punitive effect on Haywood of the transfer was a major factor in the decision and served as a ground for the decision. A legislative directive cannot be found in N.C.G.S. § 62-110.2(d)(2) or elsewhere authorizing the Commission to order a reassignment of customers based on the Commission's intent to punish an electric supplier by the selective transfer of a commercially significant and highly valuable customer.

**Am Jur 2d, Public Utilities §§ 9 et seq.**

4. **Utilities Commission § 15 (NCI3d) — electric service — inadequate service — Commission's failure to transfer service — no error**

The Utilities Commission did not err by failing to order the immediate transfer of electric service suppliers for appellant residential customers of Haywood Electric Membership Corporation upon the Commission's determination that the service provided by Haywood is inadequate or undependable and that Haywood's conditions of service and service regulations are arbitrary and unreasonably discriminatory. Under N.C.G.S.

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

§ 62-110.2(d)(2), the power to order a transfer is discretionary once the Commission has made appropriate findings which would justify a transfer. There was sufficient competent, material, and substantial evidence here to sustain the order of the Commission as to the nontransfer of the residential complainants; it was particularly noted that the Commission took appropriate steps to resolve the assorted problems at issue by ordering improvements monitored by periodic progress reports and further public hearings.

**Am Jur 2d, Public Utilities §§ 9 et seq.**

5. **Evidence and Witnesses § 2148 (NCI4th)— transfer of customer—expert testimony on impact—excluded—error**

The Utilities Commission erred in a hearing on whether to transfer customers from Haywood Electric Membership Corporation to Duke Power by excluding expert testimony on the impact of the transfer on Haywood. The evidence was relevant to a nonprofit electric supplier's ability to provide adequate future services to its consumer-members and may be significant in the Commission's formulation of an appropriate remedy. N.C.G.S. § 62-65.

**Am Jur 2d, Expert and Opinion Evidence §§ 5 et seq., 32-38.**

Appeal by Respondent Haywood Electric Membership Corporation, Intervenor North Carolina Electric Membership Corporation, and Intervenor Public Staff from order entered 5 October 1992 by the North Carolina Utilities Commission. Heard in the Court of Appeals 11 January 1994.

This appeal presents a case of first impression. In the words of the North Carolina Utilities Commission, this appeal arises from a proceeding in which "the Commission [was] faced with an unprecedented number of [customer] complainants requesting reassignment" from an electric membership corporation to an investor-owned public utility pursuant to G.S. 62-110.2(d)(2) of the Public Utilities Act. Respondent Haywood Electric Membership Corporation (hereinafter "Haywood EMC") is a rural electric nonprofit corporation established pursuant to the Electric Membership Corporation Act. *See* G.S. 117-7 *through* 117-27. This appeal involves proceedings arising from four separate complaints filed with the North Carolina Utilities Commission (hereinafter "Commission"). *See* G.S. 62-110.2(d)(2).

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

On 30 July 1990, Delora Dennis and approximately 640 residents of Transylvania County, North Carolina, filed a complaint against Haywood EMC and Duke Power Company (hereinafter "Duke," which is a public utility as defined by G.S. 62-3(23)(a)(1) ), alleging *inter alia* that Haywood EMC provided inadequate and undependable electrical service and requesting that they be reassigned to Duke. On 27 August 1990, Haywood EMC filed an answer and subsequently filed a supplemental answer and motion to dismiss the complaint. On 6 September 1990, Duke filed an answer, alleging that it had no authority to provide service to the customers of an electric membership corporation without action by the electric membership corporation or by the Commission and alleged that G.S. 62-110.2(d)(2) "provides for the Commission to consider the concerns of these customers."

On 12 September 1990, Thomas W. McGohey and approximately 229 of Haywood EMC's customers filed a similar complaint against Haywood EMC and Duke. On 28 September 1990, the Commission denied Haywood EMC's motion to dismiss. By order dated 29 November 1990, the Commission scheduled a public hearing on the complaints in Brevard, North Carolina, for 19-20 March 1991. This public hearing was later rescheduled for 21-22 May 1991.

During January 1991, Carmeletta Moses, a resident of Jackson County, North Carolina, filed a complaint against Haywood EMC and Duke, requesting reassignment from Haywood EMC to Duke. On 20 February 1991, a complaint was filed by Forrest Cole and various residents of Jackson County, North Carolina, against Haywood EMC and Nantahala Power & Light Company (hereinafter "Nantahala," which is a public utility as defined by G.S. 62-3(23)(a)(1) ), requesting reassignment to Nantahala. On 20 March 1991, the Utilities Commission's Public Staff filed with the Commission a petition signed by these customers, who alleged in the petition that "we would receive more efficient service at more reasonable rates from Nantahala Power Company."

On 18 April 1991, the Public Staff filed additional letters of complaint from Haywood EMC's customers, including a letter from M-B Industries, which is a manufacturing company in Rosman, North Carolina. The letter from M-B Industries stated that "[o]ur service from Haywood Electric has been poor . . . . If, in fact, changing providers is a possible option we would appreciate guidance regard-

IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

ing the proper administrative procedures we must follow to transfer the Haywood Electric portion of our power provision to Duke Power."

Other parties have intervened during the course of this litigation. The Public Staff, acting pursuant to G.S. 62-15, intervened in this action on behalf of the complainants. North Carolina Electric Membership Corporation (hereinafter "NCEMC") is a generation and transmission cooperative organized in accordance with Chapter 117 of the General Statutes and is a wholesale bulk power supplier for its 27 member cooperatives, one of which is Haywood EMC. On 7 January 1991, the Commission granted NCEMC's petition to intervene. Carolina Power & Light, a public utility as defined by G.S. 62-3(23)(a)(1), intervened in this action as an interested party by order dated 4 February 1991. On 10 May 1991, the National Rural Utilities Cooperative Finance Corporation (hereinafter "CFC"), a District of Columbia private, not-for-profit, national cooperative association, filed a petition to intervene. In its petition, CFC stated that it "is owed over $6.8 million by Haywood [EMC], with such funds having been loaned in conjunction with loans from [the] REA [Rural Electrification Administration], which loans are secured by one or more supplemental mortgage and security agreements which require repayment of loans over a 35-year period of time." The Commission denied CFC's petition to intervene by order dated 17 May 1991.

On 14 May 1991, the Commission held a pre-hearing conference "to consider matters of procedures, evidence, the order of examination and cross-examination of witnesses, motions to strike testimony, and other such matters." On 17 May 1991, the Commission filed a pre-hearing order which *inter alia* ordered the exclusion of the testimony of Gregory L. Booth, a witness for NCEMC, regarding the adverse economic impact on Haywood EMC of a shift of customers from Haywood EMC to other electric suppliers.

A public hearing was held on 21-22 May 1991, in Brevard, North Carolina, and a subsequent hearing was held on 7-8 August 1991, in Raleigh, North Carolina. On 5 October 1992, the Commission entered a thirty-two page "ORDER REASSIGNING ELECTRIC SERVICE FOR M-B INDUSTRIES PLANTS, PROVIDING TIME TO RESOLVE CUSTOMER COMPLAINTS PURSUANT TO REVISED WORK PLAN, AND REQUIRING PROGRESS REPORTS." The Commission, in its recitation of "Discussion of Evidence and Conclusions," summarized *inter alia* the testimony of "the 47 witnesses who testified

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

against Haywood regarding the problems and their numerous attempts to obtain relief from these problems without satisfactory response by Haywood." The order examined *inter alia* the subjects of "customer service," "voltage levels," "outage levels," "source of supply," and "construction work plan." The 5 October 1992 order provided *inter alia* as follows:

## FINDINGS OF FACT

1. Haywood EMC is a duly constituted electric membership corporation in the State of North Carolina established pursuant to Chapter 117 of the General Statutes of North Carolina. It provides electric service to portions of Buncombe, Haywood, Jackson, Macon, and Transylvania Counties, with the bulk of its service being provided in Haywood and Transylvania Counties.

2. Haywood is subject to the jurisdiction of the North Carolina Utilities Commission under G.S. 62-110.2(d)(2), which gives the Commission the authority to reassign electric service territory from one supplier to another upon a finding that service to a consumer by the electric supplier which is providing the service to that consumer's premises is or will be inadequate or undependable, or that the rates, conditions of service or service regulations, applied to that consumer, are unreasonably discriminatory.

3. Duke, Nantahala, and CP&L are engaged in the generation, transmission, and distribution of electric power to the general public for compensation in North Carolina. They are public utilities as defined by G.S. 62-3(23)(a)(1) and are electric suppliers as defined by G.S. 62-110.2(a)(3). The Commission has jurisdiction over the extension of electric power service by these utilities to meet the reasonable needs of the electric consumers on the facts of this case and has jurisdiction over the subject matter of the complaints.

4. This proceeding is before the Commission on petition of certain customers of Haywood for reassignment to other electric suppliers on the grounds that the electric service they receive from Haywood is inadequate and undependable and that the conditions of service and service regulations as applied to them are unreasonably discriminatory.

5. Haywood's customer service is not provided uniformly to its customers. The district office has discretionary power, which can be, and is, exercised arbitrarily in responding to customer complaints, deposit procedures, credit checks, disconnect procedures, equal payment plans, and late payments.

6. The complainants have received voltage from Haywood which is outside the voltage standards set by Haywood itself, REA, and this Commission. This includes periods of low voltage, high voltage, and voltage swings.

7. The improper voltage and electric service provided by Haywood has caused, and continues to cause, damage to the complainants, including, but not limited to, damage to heating equipment, water pumps, major electric appliances, and electronic equipment such as TVs, VCRs, computers, [sic] telephone answering devices.

8. The complainants have experienced and continue to experience frequent electric service outages. Among the major causes of these outages are:

(a) Haywood's inability to control or mitigate the impact of lightning, storms, planned outages, and similar problems;

(b) Haywood's inadequate and nonuniform line clearing procedures;

(c) Haywood's indifference, or inadequate response, to consumer problem reports;

(d) Haywood's lack of knowledge of customer growth and usage patterns; and

(e) Lack of communication and coordination between Haywood and its consultant engineer.

9. The complaints of Haywood EMC against its power suppliers Duke and Nantahala are without merit. There has been no conclusive showing that the power supply to Haywood from Duke or Nantahala has been inadequate. The problems Haywood has experienced in attempting to obtain sources of supply at multiple distribution level delivery points in difficult terrain, instead of obtaining a reliable transmission level sup-

ply, do not absolve Haywood of its responsibility for reliability of service.

10. The revised 1991-93 Construction Work Plan of Haywood substitutes a new tie line between the Quebec substation and the cashiers metering point for the new transmission line and substation contained in the original work plan, although the details of such a tie line have not been discussed with Duke or Nantahala. Both Duke and Nantahala objected to approval of the tie line without first settling the various issues between Haywood and the suppliers which are raised by the new tie line.

11. Haywood has instituted a new management. Haywood has also prepared and adopted a revised 1991-93 Construction Work Plan which contains improvements that, according to Haywood, will "improve its reliability of service to members through the use of sound engineering and economics judgments."

12. Responsibility for the electric utility service to the M-B Industries plants served by Haywood EMC should be transferred from Haywood to Duke Power Company. One plant is only fifty feet away from Duke's lines, another plant is some 200 yards from Duke's lines, and a sister plant in the same area is already served by Duke with a satisfactory level of service. The load on the troubled Quebec substation of Haywood can be relieved by transferring the M-B Industries plant load from Haywood to Duke, and transfer of the plants to an alternate supplier would make clear to Haywood the Commission's determination to effect a resolution of the complainants' service problems.

## CONCLUSIONS

I. The Commission concludes that the electric service provided by Haywood EMC to the Complainants and to the public witnesses in this proceeding is inadequate and undependable and that Haywood's conditions of service and service regulations, as applied to the Complainants and to the public witnesses, are arbitrary and unreasonably discriminatory.

II. The Commission further concludes that, except for the M-B Industries plants served by Haywood, there should be no reassignment of customers or service territory at this time in order to allow Haywood the opportunity to undertake the

improvements to its facilities outlined in its revised construction work plan.

III. With respect to the M-B Industries plants served by Haywood, the Commission concludes that electric service to these plants should be hereinafter furnished by Duke Power Company and that pursuant to the procedures set forth below, Haywood EMC shall cease and desist from supplying electric service to the M-B Industries plants.

The Commission ordered Duke to submit a proposal outlining its plan to serve the facilities of M-B Industries and ordered that "implementation of the transfer of responsibility for furnishing electric utility service to the M-B Industries plants from Haywood to Duke shall commence upon approval by the Commission of the proposal for transfer prepared by Duke." Additionally, the Commission's 5 October 1992 order requires quarterly progress reports from Haywood EMC "describing the status of improvements to facilities and customer services of the Haywood system, the status of customer response to the improvements, and the status of necessary approvals from REA and other agencies." Additionally, the Commission ordered further hearing and that the docket remain open for at least two years "in order to monitor and address the effectiveness of Haywood's two-year improvement program for addressing customer complaints. During this two-year period, the Commission may issue further and final Order [sic] regarding the complaints."

On 4 November 1992, respondent Haywood EMC filed a "request for rehearing, motion for stay, and request for oral argument." Pursuant to the Commission's 5 October 1992 order, Duke filed its service proposal for reassignment of M-B Industries on 3 November 1992. Haywood EMC filed a response to Duke's proposal on 9 November 1992. On 19 November 1992, the Public Staff filed a "request for reconsideration and response" recommending that "[t]he Commission should not rescind its decision to transfer the electric service of M-B Industries to Duke" and that "[t]he Commission should reconsider its decision to leave residential complainants in the Haywood EMC service area." Oral argument was held before the Commission on 30 November 1992. Duke's service proposal was accepted and authorized by the Commission by an order dated 1 December 1992. The order denied Haywood EMC's 4 November 1992 motions and denied the Public Staff's 19 November

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

1992 request for reconsideration regarding the Commission's refusal to reassign the residential complainants.

During December 1992, Haywood EMC, NCEMC, and the Public Staff all filed timely notices of appeal and exceptions to the 5 October 1992 order. On 9 December 1992, Haywood EMC filed a petition for writ of supersedeas, which was later denied by this Court. Additionally, Haywood EMC filed a petition for temporary stay, which subsequently was granted by this Court. The temporary stay has since expired.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Jerry W. Amos, for respondent-appellant Haywood Electric Membership Corporation.*

*Victoria O. Hauser, Staff Attorney, and A. W. Turner, Jr., Staff Attorney, for intervenor-appellant Public Staff.*

*Thomas K. Austin, Associate General Counsel, for intervenor-appellant North Carolina Electric Membership Corporation.*

*Steve C. Griffith, Jr., Executive Vice President and General Counsel, William Larry Porter, Associate General Counsel, Karol P. Mack, Senior Attorney, and Kennedy, Covington, Lobdell & Hickman, by Myles E. Standish, for respondent-appellee Duke Power Company.*

*Hunton & Williams, by Edward S. Finley, Jr., and James L. Hunt, for respondent-appellee Nantahala Power & Light Company.*

EAGLES, Judge.

On the appeals of respondent Haywood EMC and intervenors NCEMC and the Public Staff, the questions presented are whether the Commission erred in: (1) failing to render its decision pursuant to the standards set forth in G.S. 62-79(a), thereby frustrating appellate review; (2) reassigning complainant M-B Industries, the manufacturing company, from Haywood EMC to Duke; (3) failing to reassign the residential complainants to an electric supplier other than Haywood EMC, and; (4) excluding an expert's testimony regarding the adverse economic impact on Haywood EMC of shifting customers to other electric suppliers. After careful review of the record, transcript, and briefs, we hold that the Commission erred in reassigning M-B Industries from Haywood EMC to Duke and

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

remand for entry of an order vacating that portion of the Commission's 5 October 1992 order. We further hold that the Commission erred in excluding the expert testimony. As to the other issues brought forward in these appeals, the Commission's 5 October 1992 order is affirmed.

## I. *Standard of Review*

[1]   G.S. 62-94(b) governs our review of the Commission's order. G.S. 62-94(b) provides that an appellate court

> (b) . . . may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are:

> > (1) In violation of constitutional provisions, or

> > (2) In excess of statutory authority or jurisdiction of the Commission, or

> > (3) Made upon unlawful proceedings, or

> > (4) Affected by other errors of law, or

> > (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

> > (6) Arbitrary or capricious.

The Commission's order will not be upheld if error is found based on one of the enumerated grounds of G.S. 62-94(b). *State ex rel. Utilities Comm. v. Southern Bell*, 88 N.C. App. 153, 177, 363 S.E.2d 73, 87 (1987); *Utilities Comm. v. Bird Oil Co.*, 302 N.C. 14, 20, 273 S.E.2d 232, 235 (1981) ("judicial reversal of an order of the Utilities Commission is a serious matter for the reviewing court which can be properly addressed only by strict application of the six criteria which circumscribe judicial review"). Grounds for relief not specifically set forth in the notice of appeal filed with the Commission may not be relied upon in the appellate courts. G.S. 62-94(c). However, even when specific grounds are set forth, the applicable scope of review may be determined only from an examination of the issues brought forward by the appealing party and the nature of the supporting contentions. *Utilities Comm. v. Bird Oil Co.*, 302 N.C. 14, 273 S.E.2d 232.

## II. *Appealability of the Commission's Order*

[2]   Respondent Haywood EMC argues that "[t]he Commission's order lacks proper findings and conclusions and a statement of

the reasons or bases therefore concerning all the material issues as required by G.S. 62-79(a)." We disagree. G.S. 62-79 provides, in pertinent part, that:

> (a) All final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine the controverted questions presented in the proceedings and shall include:
>
> > (1) Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record, and
> >
> > (2) The appropriate rule, order, sanction, relief or statement of denial thereof.

G.S. 62-79(a) mandates that the Commission has "to find all facts which are essential to a determination of the issues before it, in order that the reviewing court may have sufficient information to determine whether an adequate basis exists, in law and in fact, to support the Commission's resolution of the controverted issues." *State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 29, 338 S.E.2d 888, 895 (1986), *modified on other grounds and aff'd*, 318 N.C. 686, 351 S.E.2d 289 (1987) (citations omitted). "The failure to include all the necessary findings of fact is an error of law and a basis for remand upon N.C.G.S. § 62-94(b)(4) because it frustrates appellate review." *State ex rel. Utilities Comm. v. The Public Staff*, 317 N.C. 26, 34, 343 S.E.2d 898, 904 (1986) (citations omitted). *See State ex rel. Utilities Comm. v. Carolina Water Service*, 335 N.C. 493, 502, 439 S.E.2d 127, 132 (1994); *State ex rel. Utilities Comm. v. AT&T Communications*, 321 N.C. 586, 588, 364 S.E.2d 386, 387 (1988). However, the Commission is not required to set forth comments regarding "every single fact or item of evidence presented by the parties." *State ex rel. Utilities Comm. v. Nantahala Power & Light Co.*, 313 N.C. 614, 745, 332 S.E.2d 397, 474 (1985), *rev'd on other grounds sub nom., Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 90 L.Ed.2d 943 (1986). Our Supreme Court has stated that:

> The purpose of the findings required by G.S. § 62-79(a) is to provide the reviewing court with sufficient information to allow it to determine the controverted questions presented in the proceedings. . . .

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

The Commission's summary of the appellant's argument and its rejection of the same is sufficient to enable the reviewing court to ascertain the controverted questions presented in the proceeding. That is all that G.S. § 62-79 requires.

*State ex rel. Utilities Comm. v. Conservation Council*, 312 N.C. 59, 62, 320 S.E.2d 679, 682 (1984).

Respondent Haywood EMC contends that various findings of fact actually are "mere conclusions." Regarding findings of fact, our Supreme Court has stated:

Findings of fact are statements of what happened in space and time. . . .

The Commission's mislabeling of its findings and conclusions will not, however, be fatal to its order if certain procedural requirements are met. The judgments and orders of courts and administrative bodies must reflect a basic understanding of how the decision-making process is supposed to work. "Evidence must support findings; findings must support conclusions; conclusions must support the judgment. Each step of the progression must be taken . . . in logical sequence; each link in the chain of reasoning must appear in the order itself." *Coble v. Coble*, 300 N.C. 708, 714, 268 S.E.2d 185, 190 (1980). As long as "each link in the chain of reasoning" appears in the Commission's order, mislabeling is merely an inconvenience to the courts.

*State Ex Rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 351-52, 358 S.E.2d 339, 346 (1987). *See Mackie*, 79 N.C. App. at 30, 338 S.E.2d at 896 (a conclusion of law "applies principles of law, rather than a determination of facts from the [parties'] evidence, to resolve the issue"). Here, the Commission's summary of evidence, findings of fact, and conclusions of law are mixed together in portions of the order entitled *inter alia* "Findings of Fact," "Discussion of Evidence and Conclusions," "Conclusions," and "Conclusions on Decision." Proper labeling would have made this Court's task more efficient, but we nevertheless have been able to separate facts from conclusions in examining appellants' various assignments of error. After careful scrutiny of the briefs, transcript, and record, we are persuaded that the Commission's summary of evidence, findings of fact, and conclusions of law satisfy "the limited purpose of N.C.G.S. § 62-79(a)." *Eddleman*, 320 N.C. at 353, 358 S.E.2d

at 346. Considered together, the facts presented throughout the order provide the basis for concluding, as the Commission did here, whether an action or decision was reasonable or prudent. *Id.* The mislabeling of certain portions of the record does not in itself require us to overturn the Commission's order. Having set forth the standard of review and determined that the order is appealable, we turn to the merits of the appeals.

### III. *Propriety of Reassignment of M-B Industries*

[3]  Respondent Haywood EMC argues that "[t]he Commission's order exceeds its authority under G.S. 62-110.2(d)(2)" in that the portion of the order requiring the reassignment of M-B Industries to Duke Power Company is based upon improper grounds. We agree.

G.S. 62-110.2(d) provides:

> (2) The Commission shall have the authority and jurisdiction, after notice to all affected electric suppliers and after hearing, if a hearing is requested by any affected electric supplier or any other interested party, to order any electric supplier which may reasonably do so to furnish electric service to any consumer who desires service from such electric supplier at any premises being served by another electric supplier, or at premises which another electric supplier has the right to serve pursuant to other provisions of this section, and to order such other electric supplier to cease and desist from furnishing electric service to such premises, upon finding that service to such consumer by the electric supplier which is then furnishing service, or which has the right to furnish service, to such premises, is or will be inadequate or undependable, or that the rates, conditions of service or service regulations, applied to such consumer, are unreasonably discriminatory.

G.S. 62-110.2(d)(2). In that the Commission may "order such other electric supplier to cease and desist from furnishing electric service," it is clear that the Commission, after due deliberation in an appropriate proceeding, may order the reassignment of customers from one electric supplier to another under G.S. 62-110.2(d)(2). Here, our task pursuant to G.S. 62-94 is to discern whether the Commission, after considering the relevant facts and applying the pertinent statute (G.S. 62-110.2(d)(2) ), made an allowable judgment, based upon permissible grounds as prescribed by our General Assembly, in its choice of remedy.

Regarding the extent of the Commission's authority under this statute, respondent Haywood EMC argues:

> G.S. 62-110.2(d)(2) authorizes the Commission to transfer a customer from one electric supplier to another only "upon finding that service *to such consumer* by the electric supplier which is then furnishing service, or which has the right to furnish service, to such premises, is or will be inadequate or undependable, or that the rates, conditions of service or service regulations, *applied to such consumer*, are unreasonably discriminatory." (Emphasis added.) As shown by the italicized portion of the quote, the Commission may only transfer a consumer upon a finding that service "to such consumer" is inadequate or that the rates, *etc.*, when "applied to such consumer" are unreasonably discriminatory. There is nothing in the statute that permits the Commission to require the transfer of one customer for the purpose of letting an electric supplier know that the Commission is serious about the need to solve alleged problems of other customers. Therefore, the Commission has exceeded its authority under the statute.

In our examination of the 5 October 1992 order, we find particularly troubling a specific passage from the section of the order entitled "Conclusions on Decision" which states:

> The Commission has concluded that the service complaints in the Quebec substation area indicate a level of service that has been unacceptable and needs to be improved. The most severe remedy would be a transferral of the entire service area to another supplier. Other remedies include an upgrade of the service facilities, or transferral of a portion of the service area to another supplier in order to relieve the load on the Haywood facilities, or some combination thereof.

> The Commission further concludes that the best candidate for a transferral of a portion of the Haywood service area to another supplier is the M-B Industries plants. One plant is fifty feet away from an alternative supplier (Duke), its sister plant in the same area is already served by that alternative supplier with a satisfactory level of service, and the third plant (Flame Spray) is some 200 yards from Duke's lines. *No other single customer in the area affects as many employees, and people, as these plants.* Transferral of the M-B Industries plants from Haywood to Duke would relieve the load on the

## IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

troubled Quebec substation. *Transferral of the plants would also make it clear to Haywood, and particularly to the Board of Directors of Haywood, the seriousness with which the Commission views the service problems that have been occurring, and the Commission's determination to press for a resolution of the service problems throughout the Haywood service areas. The plants are apparently the only industrial plants in Transylvania County served by Haywood. It pays Haywood approximately $4,000 per month for the electric service.*

(Emphasis added.) While Haywood EMC disputes the Commission's findings regarding the Quebec substation, it argues that assuming *arguendo* these findings were true, the Commission's conclusion that the "[t]ransferral of the M-B Industries plants from Haywood to Duke would relieve the load on the troubled Quebec substation," is irrelevant to "the requirements of G.S. 62-110.2(d)(2) that the Commission make a finding that Haywood's service *to M-B Industries* is or will be inadequate or undependable or that the rates, conditions of service or service regulations are unreasonably discriminatory *as applied to M-B Industries*." (Emphasis in original.)

In its conclusions, the Commission ruled that Haywood EMC's service to *all* complainants was "inadequate and undependable and that Haywood's conditions of service and service regulations, as applied to the complainants and to the public witnesses, are arbitrary and unreasonably discriminatory." While it is obvious from the order that the Commission declined to impose "[t]he most severe remedy . . . [that is,] a transferral of the entire service area to another supplier," it is also apparent from the record that the poor quality of electric service arising from the "troubled Quebec substation" affected the area's individual residential consumers as well as the facilities at M-B Industries. Yet the Commission elected to transfer only M-B Industries. Accordingly, it is apparent from the italicized portion of the Commission's order, *supra*, that the punitive effect on Haywood EMC of the transfer of its (Haywood EMC's) largest commercial ratepayer was a major determinative factor in the Commission's decision to reassign M-B Industries and served as a ground for the Commission's decision to reassign M-B Industries while leaving the similarly affected residential consumers assigned to Haywood EMC. The last sentence of G.S. 62-110.2(d)(2) expressly delineates the five grounds upon which a transfer may be based: (1) inadequate service; (2) undependable service; (3) unreasonably discriminatory conditions of service; (4) unreasonably

discriminatory service regulations, or; (5) unreasonably discriminatory rates. We do not find a legislative directive in G.S. 62-110.2(d)(2) or elsewhere authorizing the Commission to order a reassignment of customers based on the Commission's intent to punish an electric supplier by the selective transfer of a commercially significant and highly valuable customer. Nor do we find in the General Statutes authority for the Commission to transfer customers for purposes of "mak[ing] it clear" to the management of an electric membership corporation that the Commission viewed their situation seriously.

We conclude that authority for a punitive basis for the transfer of customers by the Commission would have to be expressly enacted by our General Assembly. *See Utilities Comm. v. Electric Membership Corp.*, 275 N.C. 250, 166 S.E.2d 663 (1969) (Utilities Commission is a creation of the Legislature and has no authority except insofar as that authority has been conferred upon it by statute). *See also Utilities Comm. v. Electric Membership Corp.*, 276 N.C. 108, 171 S.E.2d 406 (1970); *Utilities Comm. v. Edmisten, Atty. General*, 291 N.C. 451, 232 S.E.2d 184 (1977). At this time, the Public Utilities Act does not contain such authority. Accordingly, we reverse the Commission's decision to transfer the M-B Industries plants from Haywood to Duke, G.S. 62-94(b)(2), and we remand for entry of an order reinstating service of these plants by Haywood EMC.

IV. *Propriety of Failure to Reassign Residential Complainants*

[4]  The Public Staff argues that the Commission erred "by failing to order an investor-owned utility to serve the appellants[-residents] and by failing to order Haywood Electric Membership Corporation to cease and desist from providing electrical service to the appellants[-residents]." We disagree.

The Public Staff contends that G.S. 62-110.2(d)(2), *supra*, mandates the immediate transfer of electric service suppliers upon the entry of the Commission's determination "that the service provided to the petitioning consumers by the current service supplier [Haywood EMC] is inadequate or undependable, or that the conditions of service and service regulations, as applied to those consumers, is unreasonably discriminatory." The Public Staff argues that the General Assembly has not authorized a waiting period for transfer proceedings and that the Commission has acted in excess of its statutory authority by unilaterally instituting a delay period through its failure to immediately reassign the residential complainants.

## IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

We discern no directive in G.S. 62-110.2(d)(2) which *mandates* an automatic transfer of a customer upon the Commission's finding of the existence of "inadequate or undependable . . . [or] unreasonably discriminatory" service. *Id.* Rather, the precise language utilized by our General Assembly, stating that "[t]he Commission shall have the authority and jurisdiction" to order a reassignment, grants to the Commission the *power* to order a transfer but does not require an automatic, immediate transfer. We conclude that under G.S. 62-110.2(d)(2) once the Commission has made appropriate findings which would justify a transfer, the power of the Commission to order a transfer is discretionary. *Cf. State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 338 S.E.2d 888 (1986), *modified on other grounds and aff'd*, 318 N.C. 686, 351 S.E.2d 289 (1987) (interpreting as discretionary the language in G.S. 62-118(a) "[u]pon finding . . . that there is no reasonable probability of a public utility realizing sufficient revenue from a service to meet its expenses, the Commission shall have power . . . to authorize by order any public utility to abandon or reduce such service"); *Utilities Comm. v. R.R.*, 254 N.C. 73, 118 S.E.2d 21 (1961). *Compare e.g.*, G.S. 62-18 (mandating that "[t]he Commission *shall* keep a record showing in detail all receipts and disbursements" and that "all license fees and seal taxes, all money received from fines and penalties, and all other fees paid into the office of the Utilities Commission *shall* be turned in to the State treasury") *with* G.S. 62-110.2(d)(2). Upon careful consideration of the whole record, we conclude that there is sufficient competent, material, and substantial evidence to sustain the order of the Commission as to the nontransfer of the residential complainants. G.S. 62-65(a). In so concluding, we particularly note that the Commission took the appropriate steps to resolve the assorted problems at issue by ordering improvements to Haywood EMC's facilities and customer services, monitored by periodic progress reports from Haywood EMC and by further public hearings. The Public Staff further contends that the petitioning consumers "were entitled to the same treatment by the Commission as that accorded to M-B Industries . . . . [in] that the same findings of fact regarding inadequate, undependable, and discriminatory service that supported a change in the electric service provider of M-B· Industries were not found to support a change in service provider for all the rest of the complainants, resulting in unequal treatment before the law." Given that we have held that the Commission reassigned M-B Industries based upon improper grounds and remanded for entry of an order reinstating Haywood EMC

as the electric supplier for M-B Industries, this argument and the remainder of the Public Staff's arguments are rendered moot by our disposition of the other issues in this appeal.

## V. Propriety of Exclusion of Expert Testimony Regarding Economic Impact of Transfer on Nonprofit Electric Supplier

[5] Haywood EMC and NCEMC argue that the Commission erred by excluding the testimony of Gregory L. Booth, an executive vice president of an engineering consulting firm, who would have testified *inter alia* that "there will be significant and irreparable harm imposed on Haywood EMC and its member/consumers and on NCEMC and its other members if any or all of the service area is transferred to another power supplier." We agree.

G.S. 62-65 provides:

(a) When acting as a court of record, the Commission shall apply the rules of evidence applicable in civil actions in the superior court, insofar as practicable, but no decision or order of the Commission shall be made or entered in any such proceeding unless the same is supported by competent material and substantial evidence upon consideration of the whole record. Oral evidence shall be taken on oath or affirmation. The rules of privilege shall be effective to the same extent that they are now or hereafter recognized in civil actions in the superior court. The Commission may exclude incompetent, irrelevant, immaterial and unduly repetitious or cumulative evidence. All evidence, including records and documents in the possession of the Commission of which it desires to avail itself, shall be made a part of the record in the case by definite reference thereto at the hearing. Any party introducing any document or record in evidence by reference shall bear the expense of all copies required for the record in the event of an appeal from the Commission's order. Every party to a proceeding shall have the right to call and examine witnesses, to introduce exhibits, to cross-examine opposing witnesses on any matter relevant to the issues, to impeach any witness regardless of which party first called such witness to testify and to rebut the evidence against him. If a party does not testify in his own behalf, he may be called and examined as if under cross-examination.

(b) The Commission may take judicial notice of its decisions, the annual reports of public utilities on file with the

IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

Commission, published reports of federal regulatory agencies, the decisions of State and federal courts, State and federal statutes, public information and data published by official State and federal agencies and reputable financial reporting services, generally recognized technical and scientific facts within the Commission's specialized knowledge, and such other facts and evidence as may be judicially noticed by justices and judges of the General Court of Justice. When any Commission decision relies upon such judicial notice of material facts not appearing in evidence, it shall be so stated with particularity in such decision and any party shall, upon petition filed within 10 days after service of the decision, be afforded an opportunity to contest the purported facts noticed or show to the contrary in a rehearing set with proper notice to all parties; but the Commission may notify the parties before or during the hearing of facts judicially noticed, and afford at the hearing a reasonable opportunity to contest the purported facts noticed, or show to the contrary.

G.S. 62-65.

G.S. 62-60 provides:

For the purpose of conducting hearings, making decisions and issuing orders, and in formal investigations where a record is made of testimony under oath, the Commission shall be deemed to exercise functions judicial in nature and shall have all the powers and jurisdiction of a court of general jurisdiction as to all subjects over which the Commission has or may hereafter be given jurisdiction by law. The commissioners and members of the Commission's staff designated and assigned as examiners shall have full power to administer oaths and to hear and take evidence. The Commission shall render its decisions upon questions of law and of fact in the same manner as a court of record. A majority of the commissioners shall constitute a quorum, and any order or decision of a majority of the commissioners shall constitute the order or decision of the Commission, except as otherwise provided in this Chapter.

G.S. 62-60.

It is well established that within its discretion the Commission may agree with a single witness, provided that the evidence supports his or her position, regardless of the number of opposing

witnesses that might come forward. *State Ex Rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 352, 358 S.E.2d 339, 346 (1987). This Court is then required to determine whether the Commission's decision is supported by "competent, material and substantial evidence in view of the entire record as submitted." G.S. 62-94(b)(5). However, here we are confronted with the issue of the propriety of the Commission's *exclusion* of testimony from an expert witness.

Mr. Booth's testimony was pre-filed by NCEMC and was offered to "evaluate the financial impact which will be imposed on Haywood EMC and its remaining consumers if any or all of the service area is transferred to another utility." *See* G.S. 62-66. The testimony was excluded by an order of the Commission entered prior to the first public hearing. G.S. 62-69. Mr. Booth's testimony stated that "there will be significant and irreparable harm imposed on Haywood EMC and its member consumers and on NCEMC and its other members if any or all of the service area is transferred to another power supplier." NCEMC argues that the Commission should have considered the financial impact on both Haywood EMC and NCEMC of transferring customers in making its determination of whether to order the transfer of any of Haywood EMC's customers. NCEMC also argues that such consideration is constitutionally mandated by due process under both the federal and state constitutions. NCEMC further argues that the customer reassignments "will reduce the payment base and force higher rates on the residential members, thereby frustrating the original intent of the REA [Rural Electrification Act of 1936, 7 U.S.C.A. 901 *et seq.*], i.e., to provide affordable electric service to the rural areas of this country." Noting its own substantial loans acquired through the Rural Electrification Administration and "made on the basis of existing load and anticipated future load of Haywood and NCEMC's other members," NCEMC cites the following passage from a recent federal case, *City of Morgan City v. South Louisiana Electric*, 837 F. Supp. 194, 199 (W.D.La. 1993), which involved the municipal condemnation of the property of a distribution cooperative, as support for the relevancy of Mr. Booth's evidence to the Commission's proceedings:

> This Court notes that the federal government, through the REA, has loaned directly or guaranteed loans to Cajun [Electric Power Cooperative, a generation and transmission cooperative] of approximately $3.2 billion. The federal government's security for these loans is limited to the assets of Cajun and the revenue stream resulting from the sale of electric

**IN RE DENNIS v. DUKE POWER CO.**

[114 N.C. App. 272 (1994)]

power generated by the facilities constructed by Cajun to its members/owner distribution cooperatives, including SLECA [a federally financed, nonprofit cooperative], under the All Requirements Wholesale contracts. Loans for the construction of multi-million dollar generating plants were made on the basis of existing load and anticipated future load of SLECA and Cajun's other member distribution cooperatives with the expectation that those loads would continue and grow in order to generate the revenue stream necessary to repay the loans. The report by the REA details the backgrounds of both Cajun and SLECA including the financial stability of the cooperatives, which is of particular concern to the United States considering the $3.2 billion debt involved. The REA made a detailed analysis of the ability of Cajun and the SLECA to repay these loans and the impact of the proposed expropriation on this repayment. Further, *the expropriation would result in a loss of operating margins*, as the customers sought to be expropriated by the City of Morgan City are located in SLECA's highest density service area. *Therefore, expropriation of these customers would reduce the payment base and thereby force higher rates on those being served in less dense areas, thereby frustrating the original intent of the REA, i.e., to provide affordable electrical service to the rural areas of this country.* Further, the expropriation by stripping SLECA's densest service area could place repayment itself in jeopardy.

*City of Morgan City v. South Louisiana Electric*, 837 F. Supp. 194, 199 (W.D.La. 1993) (emphasis added). *See* G.S. 62-2(3) (declaring our State's public policy to be "[t]o promote adequate, reliable and economical utility service to *all* of the citizens and residents of the State"); G.S. Chapter 117 (North Carolina's version of the federal Rural Electrification Act); G.S. 117-2 (declaring that the "purpose of [the] North Carolina Rural Electrification Authority is to secure electrical service for the rural districts of the State . . . and it is hereby empowered to do" several enumerated activities, including "(12) . . . all other acts and things which may be necessary to aid the rural communities in North Carolina to secure electric energy"). *See also Membership Corp. v. Light Co.*, 253 N.C. 610, 616-17, 117 S.E.2d 764, 769 (1961) ("The 'Rural Electrification Act of 1936,' USCA, Title 7, § 901 *et seq.*, the Act creating the North Carolina Rural Electrification Authority, G.S. Chapter 117, Art. 1, and the Act providing for the formation of

nonprofit membership corporations, G.S. Ch. 117, Art. 2, established a Federal-State policy to provide the benefits of electric service in rural areas not served or inadequately served with electricity").

Supporting the admissibility of Mr. Booth's testimony, Haywood EMC argues that

It is important for the Court to recognize the important role that electric membership corporations, in general, and Haywood, in particular, have played in the health and welfare of this State and how the Commission's order, if not reversed, will affect that role.

. . . .

It is the declared policy of this State to "promote adequate, reliable and economical utility service to all of the citizens and residents of the State." G.S. 62-2. This policy cannot be accomplished unless all electric suppliers, including Haywood, are financially able to construct and maintain their facilities.

. . . . Obviously, the loss of this revenue will affect Haywood's ability to serve its remaining customers and to make the costly improvements required by the Commission. Therefore, this loss of revenues is relevant to the Commission's decision. Nevertheless, the Commission refused to permit witness Booth to offer evidence showing how the loss of this revenue would affect Haywood's ability to serve its remaining customers.

. . . .

The Commission's decision to exclude this evidence not only violates rules of evidence, it is in direct contravention of the Commission's obligations under G.S. 62-2 to "promote adequate, reliable and economical utility service to all of the citizens and residents of the State." The Commission's decision not to consider any evidence on any harm that its decision may have on Haywood and its remaining customers was *a fortiori* a decision that the Commission can order a transfer of customers under G.S. 62-110.2(d)(2) without regard to the financial effect of that decision on Haywood. Haywood respectfully suggests that the Commission's decision to ignore the financial effect of its order on Haywood is in direct conflict with G.S. 62-2.

G.S. 62-65(a) provides that "the Commission shall apply the rules of evidence applicable in civil actions in the superior court, insofar as practicable." *See* G.S. 8C-1, Rule 401 (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). It is well established that "evidence is relevant if it has any logical tendency, *however slight*, to prove a fact in issue in the case." *State v. Prevette*, 317 N.C. 148, 162, 345 S.E.2d 159, 168 (1986) (citations omitted) (emphasis added). *See also State v. Moore*, 335 N.C. 567, 440 S.E.2d 797 (4 March 1994); *Penley v. Penley*, 314 N.C. 1, 25, 332 S.E.2d 51, 65 (1985). *See generally* K. Broun, 1 *Brandis & Broun on Evidence*, § 81 (4th Ed. 1993). Furthermore, " '[p]rocedure before the Commission in the trial of utilities matters, *and particularly in the admission of evidence*, is not so formal as litigation conducted in the superior court. *Utilities Comm. v. Telegraph Co.*, 267 N.C. 257, 148 S.E.2d 100 (1966).' " *Utilities Comm. v. Springdale Estates Assoc.*, 46 N.C. App. 488, 491, 265 S.E.2d 647, 649-50 (1980) (emphasis added). *See generally* K. Broun, 1 *Brandis & Broun on Evidence*, § 4, at 13 (4th Ed. 1993) (in administrative hearings, "[w]hatever may be the situation with regard to evidence admitted in violation of the regular rules, exclusion of significant evidence admissible under those rules may certainly be reversible error"). We note that in its 5 October 1992 order, the Commission noted that "[t]he plants are apparently the only industrial plants in Transylvania County served by Haywood. It pays Haywood approximately $4,000 per month for the electric service." We note further that Mr. Booth's testimony was excluded from the proceedings even though it is apparent from the record that the Commission considered evidence of the amount of monthly payments that M-B Industries made to Haywood EMC (notwithstanding that rates were not at issue).

It is clear that the economic effect on an electric supplier of a transfer of its customers to another electric supplier is not one of the expressly delineated grounds for transfer under G.S. 62-110.2(d)(2). It is also clear that Haywood is a *nonprofit* corporation, established pursuant to statute: it is owned by and dependent upon its consumer-members. G.S. 117-16 (providing that "[t]he corporate purpose of each corporation formed hereunder shall be to render service to its members only, and no person shall become or remain a member unless such person shall use energy supplied

IN RE DENNIS v. DUKE POWER CO.

[114 N.C. App. 272 (1994)]

by such corporation and shall have complied with the terms and conditions in respect to membership contained in the bylaws of such corporation"); *see Utilities Comm. v. Municipal Corporations*, 243 N.C. 193, 202, 90 S.E.2d 519, 527 (1955) (distinguishing suppliers of electric energy for profit from cooperatives "which are created and operated on a nonprofit basis pursuant to the established public policy of the State and Federal Government"). G.S. 110.2(d)(2) directs the Commission to examine how the electric supplier's service "is or will be . . . ," connoting a forecast by the Commission as to the quality of *future* services provided by the electric supplier. This type of evidence, given both the strong public policy enunciated in both G.S. 62-2 and G.S. 117-2 and the liberal standards for the admission of evidence in proceedings before the Commission, is relevant to a nonprofit electric supplier's ability to provide adequate future services to its consumer-members. This evidence *may* be significant in the Commission's formulation of an appropriate remedy, within its limited discretion as prescribed by G.S. 110.2(d)(2), which best serves the public policies and competing interests involved.

While we hold that this evidence is admissible pursuant to G.S. 62-65, we note that the weight to be accorded to the testimony lies within the Commission's sound discretion. *See State Ex Rel. Utilities Comm. v. Eddleman*, 320 N.C. 344, 358 S.E.2d 339 (1987); *Utilities Comm. v. Town of Pineville*, 13 N.C. App. 663, 672, 187 S.E.2d 473, 478 (1972). We conclude that Mr. Booth's testimony does not constitute "incompetent, irrelevant, immaterial and unduly repetitious or cumulative evidence." G.S. 62-65(a). Accordingly, we hold that the Commission erred by excluding this testimony. G.S. 62-94(b)(4).

VI. *Conclusion*

Summarizing, we hold that the Commission erred in transferring the facilities of M-B Industries from Haywood EMC to Duke. Accordingly, we remand for entry of an order vacating that portion of the Commission's 5 October 1992 order transferring M-B Industries from Haywood EMC to Duke and for further proceedings not inconsistent with this opinion. We further hold that the Commission erred in excluding the testimony of expert witness Booth as to the financial impact on Haywood EMC of the transfer of customers. As to the other issues brought forward in these appeals, the Commission's decision is affirmed.

For the reasons stated, the Commission's 5 October 1992 order is

Affirmed in part, reversed in part and remanded.

Judges JOHNSON and WYNN concur.