STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, AND THE PUBLIC STAFF OF THE NORTH CAROLINA UTILITIES COMMISSION v. MARTHA H. MACKIE, APPLICANT-APPELLANT

No. 8510UC69

(Filed 4 February 1986)

**1. Utilities Commission § 19— water and sewer services—public utility**

Appellant is providing water and sewer services "to or for the public" within the meaning of N.C.G.S. 62-3(23)a.2 and is subject to regulation by the Utilities Commission where, ever since she acquired property containing water distribution and sewage disposal facilities, she has provided such services to any resident of a house connected to her facilities who desired the services; she provides water to eighteen customers and sewage services to nineteen customers in an unincorporated village; and although appellant has solicited no customers and has not extended her facilities to any residences not previously served, she has provided service to new customers who moved into homes already connected to her facilities.

**2. Utilities Commission § 19— water and sewer services—public convenience and necessity**

The Utilities Commission did not err in concluding that appellant's operation of water and sewer systems served the public convenience and necessity where the evidence before the Commission indicated that a number of residences served by appellant's water and sewer system were situated on lots of insufficient size to support both a well and a septic system and the occupants of these residences thus have no alternative means of water supply and sewage disposal.

**3. Utilities Commission § 19— water and sewer services—refusal to permit abandonment—insufficient findings**

The facts found by the Utilities Commission were insufficient to support its conclusion that appellant's evidence did not establish her entitlement to abandon her operation of water and sewer systems on the ground that operation of the systems cannot produce sufficient revenues to meet the expenses thereof where the Commission failed to make findings as to the reasonable expenses of operation and the revenues which the systems might reasonably be expected to produce and failed to give consideration to appellant's evidence concerning the anticipated costs of necessary repairs to a water tank. N.C.G.S. 62-79(a); N.C.G.S. 62-118(a).

**4. Utilities Commission § 1— utilities regulation—order to comply with laws**

The Utilities Commission does not exceed its statutory authority by ordering one who is, in fact, operating as a public utility to comply with laws providing for utilities regulation. N.C.G.S. 62-30; N.C.G.S. 62-32(b); N.C.G.S. 62-118(b).

5. **Utilities Commission § 2— water and sewer services—finding of public convenience and necessity—order to apply for certificate unnecessary**

    An order of the Utilities Commission requiring appellant to apply for a certificate of public convenience and necessity for the operation of water and sewer systems was redundant where the Commission has already found that appellant is operating a utility which serves the public convenience and necessity. If the Commission should conclude that appellant's application to abandon service should be denied, the Commission should proceed to establish the territory to be served by appellant, issue the certificate, establish the rates to be charged for the services, and, if necessary, exercise its statutory powers to compel compliance with its lawful orders.

6. **Utilities Commission § 19— requiring continuation of public utility—no involuntary servitude**

    An order of the Utilities Commission requiring appellant to continue the operation of public water and sewer utilities would not violate constitutional prohibitions against involuntary servitude so long as appellant is justly compensated for the services she provides.

    Judge WEBB dissenting.

APPEAL by applicant from order of North Carolina Utilities Commission entered 10 September 1984. Heard in the Court of Appeals 29 August 1985.

On 25 January 1984, Martha H. Mackie made application to the North Carolina Utilities Commission for authority to cease providing water service and sewage disposal service to residential customers in the unincorporated village of Falls of the Neuse in Wake County. In her application, Mrs. Mackie maintained that she was not operating a public utility and was not therefore, subject to the regulatory jurisdiction of the Commission. However, in the event that she was found by the Commission to be subject to its jurisdiction, Mrs. Mackie asserted that she should be permitted to discontinue service because the revenues derived from providing water and sewer services were insufficient, after meeting her costs of operation, maintenance and depreciation, to yield a fair return. The Commission scheduled a public hearing on the application for 10 April 1984. On 6 April 1984, upon motion of the Public Staff, the scope of the hearing was expanded "to also consider the issue of whether or not Martha H. Mackie is a public utility under the jurisdiction of the North Carolina Utilities Commission."

The evidence before the Commission tended to show that in the fall of 1982, George C. Mackie, Jr., applicant's husband, pur-

chased two tracts of land located in Falls of the Neuse from Scarsdale Investment Corporation for the sum of $45,000.00. Title to the tracts, consisting of 18.69 acres and 1.0 acres respectively, was taken in Mrs. Mackie's name as a gift to her from her husband for long-range investment purposes. When Mrs. Mackie acquired the property, there was located on the 18.69 acre tract a water distribution system consisting of a water pipeline from a spring located on property owned by the United States Government, a pumphouse containing a pump and concrete holding tank, and an elevated steel water storage tank connected to water lines running to residences in the village. A sewage disposal facility, consisting of a large sand pit, was located on the 1 acre tract, which is not contiguous to the larger tract. Sewage is emptied into the sand pit through a main located beneath the roadway.

The evidence showed that Falls of the Neuse was originally a mill village which grew around a textile mill operated by the Neuse Manufacturing Company. Neuse also owned most of the residences in the village, and provided a water system. Neuse went out of business, and the mill was intermittently operated by a succession of owners and receivers until after World War II, when Erwin Mills purchased the mill and some of the residences. In approximately 1949, Erwin Mills constructed the water and sewer systems which presently exist, and provided water and sewage disposal services to its own employees and tenants and also to other residents of the village. After Erwin Mills ceased operating the mill, the property was sold. Gradually, the residences were conveyed to individuals. The property upon which the water system and sewage disposal facility are located was conveyed to Henry Young and Lewis Walton and, later, to Scarsdale Investment Corporation. These owners continued to provide water and sewage disposal services to residents of the village.

When Mrs. Mackie acquired the property, Scarsdale Investment Corporation had been charging a monthly fee of $10.00 for water service and $5.00 for sewage disposal. Soon after she acquired the property, Mrs. Mackie increased the monthly charges to $15.00 for water service and $10.00 for sewage disposal. Five customers discontinued use of the systems after the rates were increased. At the time of the hearing, there were 17 users of both water and sewer services, 1 user of water service only, and 2 users of sewer service only.

The evidence does not disclose the total number of residences to which the water or sewer systems were capable of providing service, however, no additional residences have been connected to either system since Mrs. Mackie acquired it. The systems do not serve all of the residences in Falls of the Neuse Village; those residences which do not obtain water from Mrs. Mackie's tank are served by wells and those residences which do not use her sewage disposal system are served by septic tanks. Although no additional residences have been connected, new occupants have moved into residences already connected and have obtained water and sewer service from Mrs. Mackie.

Mrs. Mackie testified that she did not acquire the property for the purpose of operating a water or sewer utility and that she had made no effort to attract customers. She has continued to provide the same service as had been provided by her predecessors in title as a convenience to the present users. In her opinion, the presence of the water supply facility is a hindrance to the development of her property. George H. Mackie, Jr., testified that although he had been aware of the water and sewer facilities when he purchased the property, he had been advised that he could terminate the service. According to all of the evidence, the system had never been authorized or regulated by the Utilities Commission; its existence was unknown to the Commission until it received a complaint when Mrs. Mackie increased the monthly charges for service. Upon the complaint being made, Mrs. Mackie was contacted by Jerry Tweed, Director of the Water Division of the Public Staff of the Utilities Commission, who advised her that she should file either an application for a certificate of public necessity and convenience, in order to continue providing service, or an application to abandon service.

Mrs. Mackie also offered evidence as to her actual out-of-pocket expenses for operation of the system for the 14 month period from 1 January 1983 until 29 February 1984, exclusive of property taxes, depreciation, major repairs, bookkeeping and accounting expenses, or salary to her or her husband. Based upon these figures, she estimated that the annual cost of operation, including taxes and bookkeeping expenses but excluding major repairs, depreciation or salary to herself or her husband, will be approximately $4,600.00. Assuming that the number of present customers remains constant, total revenues for a one-year period

will be approximately $5,500.00. There was evidence tending to show that the water tank is in need of painting at an estimated cost of $5,000.00. No evidence of the original cost of the facilities was available, however, Mrs. Mackie offered evidence as to the present cost of replacement.

The Public Staff offered evidence tending to show that many of the residences served by the system were located on lots which were of insufficient size to support both a well and a septic tank. Therefore, many of Mrs. Mackie's customers would have no alternative source of water or sewer service if Mrs. Mackie was permitted to discontinue service.

After making findings of fact and conclusions of law, the Commission entered a Final Order (1) declaring that Mrs. Mackie was "a public utility providing water and sewer service in the village of Falls of the Neuse," (2) denying her application to discontinue the service, and (3) ordering her to submit an application for a certificate of public necessity and convenience. Mrs. Mackie appeals.

*Vickie L. Moir, Staff Attorney, for Public Staff of the North Carolina Utilities Commission, intervenor-appellee.*

*I. Beverly Lake for applicant-appellant.*

MARTIN, Judge.

I

The scope of judicial review of a decision of the Utilities Commission is delineated by G.S. 62-94. According to G.S. 62-94(b), this Court may reverse or modify a decision of the Utilities Commission only when

[T]he substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

G.S. 62-94(b); *Utilities Commission v. Bird Oil Co.*, 302 N.C. 14, 273 S.E. 2d 232 (1981). Grounds for relief not specifically set forth in the notice of appeal may not be relied upon in the appellate courts. G.S. 62-94(c). However, even when specific grounds are set forth, the applicable scope of review may be determined only from an examination of the issues brought forward by the appealing party and the nature of the argument in support thereof. *Utilities Commission v. Bird Oil Co., supra.*

II

[1] The first issue presented by appellant is whether the Commission erred in concluding and decreeing that she is operating a public utility subject to regulation by the Utilities Commission. In the notice of appeal filed with the Commission, and in the assignments of error in the record on appeal, appellant referred to five of the six statutory criteria as grounds for relief. It is apparent, however, that the basis of her argument before this Court, as to this first issue, is her contention that the Commission erred in its application of the law to the facts found by it. Thus our review of the Commission's conclusion and decree that appellant is operating a public utility is properly conducted under G.S. 62-94(b)(4), whether the Commission's order was affected by errors of law.

In its findings of fact, the Commission summarized the history of the water service and sewage disposal facilities from their beginning until the subject property was acquired by Mrs. Mackie. It found that appellant's husband was aware, when he purchased the property, that the facilities were on the property and were in use. After appellant acquired the property, she continued to provide the services, maintained the equipment, employed men to operate the facilities, and charged fees to those using the services. Although it found that no new homes have been connected to the system since appellant acquired it, the Commission found that appellant had extended service to new residents of homes already connected. At the time of the hearing, appellant was selling water to eighteen customers and providing sewage disposal service to nineteen customers. Appellant has not

assigned error to the Commission's findings of any of the foregoing facts; they are supported by competent evidence and are conclusive on appeal. *Utilities Commission v. Intervenor Residents*, 305 N.C. 62, 286 S.E. 2d 770 (1982).

The term "public utility" is defined by G.S. 62-3(23). With respect to water and sewer utilities, the statute provides:

> G.S. 62-3(23)a. "Public utility" means a person, . . . owning or operating in this State equipment or facilities for:
>
> . . . .
>
> 2. Diverting, developing, pumping, impounding, distributing or furnishing water to or for the public for compensation, or operating a public sewerage system for compensation; provided, however, that the term "public utility" shall not include any person or company whose sole operation consists of selling water to less than 10 residential customers . . . .

Applying the definition to the facts found by the Commission, there is no question that appellant meets the statutory criteria of distributing water and providing sewage disposal service to more than ten residential customers for compensation. The basis of appellant's argument, however, is that since she has not offered to extend services to any residence other than those already connected to her system when she acquired it, she is not operating a public utility because she does not provide the services "to or for the public."

Although it excluded from the definition of "public utility" those water and sewer systems serving less than ten residential customers, the General Assembly did not attempt, in Chapter 62 of the General Statutes, to define the word "public" or establish any standardized test as to when a utility service is provided "to or for the public." Hence, our Supreme Court has twice been required to consider this question and to attempt a definition of the word "public" as used in the utilities law. In *Utilities Commission v. Carolina Telephone and Telegraph Co.*, 267 N.C. 257, 148 S.E. 2d 100 (1966), the Court defined "public," as used in G.S. 62-3(23) as follows:

> One offers service to the "public" within the meaning of the statute when he holds himself out as willing to serve all

who apply up to the capacity of his facilities. It is immaterial, in the connection, that his service is limited to a specified area and his facilities are limited in capacity.

*Id.* at 268, 148 S.E. 2d at 109. In *Utilities Commission v. Simpson*, 295 N.C. 519, 246 S.E. 2d 753 (1978), the Court rejected a definition of "public," that would have required a service to be offered to an indefinite class or to the community at large. Instead, the Court approved a more flexible interpretation of the term.

[W]hether any given enterprise is a public utility within the meaning of a regulatory scheme does not depend on some abstract, formulistic definition of "public" to be thereafter universally applied. What is "public" in any given case depends rather on the regulatory circumstances of that case. Some of these circumstances are (1) nature of the industry sought to be regulated; (2) type of market served by the industry; (3) the kind of competition that naturally inheres in that market; and (4) effect of non-regulation or exemption from regulation of one or more persons engaged in the industry. The meaning of "public" must in the final analysis be such as will, in the context of the regulatory circumstances, . . . accomplish "the legislature's purpose and comport with the public policy." (Citation omitted.)

*Id.* at 524, 246 S.E. 2d at 756-57. The Court concluded that although a service may be offered only to a definable class, rather than to the public at large, it still may be considered an offering of service to the "public" within the meaning of the regulatory statutes.

We believe that appellant is providing water and sewage disposal service "to or for the public" under the holdings of both *Carolina Telephone and Telegraph Co.* and *Simpson*. Since her acquisition of the water distribution and sewage disposal facilities, appellant has provided services to any resident of a house connected thereto who desired the services. Although she has solicited no customers and has not extended her facilities to any residences not previously served, she has willingly provided service to new customers who moved into homes already connected to her facilities. In so doing, she has held herself out as willing to serve, indiscriminately, all who have applied, up to the capacity of

her facilities, within the holding of *Carolina Telephone and Telegraph Co., supra.*

By application of the "regulatory circumstances" interpretation of *Simpson, supra,* we reach the same result. By excluding from its definition of public utility those water systems serving fewer than ten customers, G.S. 62-3(23)a.2, the General Assembly manifested its clear intent that systems serving ten or more customers serve a sufficient segment of the public to create a public interest in their regulation to make certain that adequate service is provided at fair rates. G.S. 62-2. Evidence before the Commission indicated that more than half of all water systems regulated by the Commission serve a limited number of users in limited areas, such as a single residential development. The effect of nonregulation of these systems would expose their users to the risk of inadequate service and exorbitant rates, with no alternative sources of service.

We hold, therefore, that appellant is providing water and sewage disposal service "to or for the public" within the meaning of G.S. 62-3(23)a.2 and is subject to regulation by the Utilities Commission. That portion of the Commission's order so holding is affirmed.

III

[2] After concluding that appellant is operating a public utility, the Commission also concluded that her operation of the water and sewer systems served the public convenience and necessity. In her notice of appeal and exceptions filed with the Commission, appellant asserted that such conclusion was in excess of the statutory authority of the Commission and was arbitrary and capricious. She based her exception on the grounds that she was not operating a public utility system. In view of our affirmation of the Commission's decision that appellant is, in fact, operating a public utility, its determination that the public convenience and necessity were served thereby is clearly within its statutory authority. *See* G.S. 62-110, -118.

In her assignments of error contained in the record on appeal, appellant seeks to rely on an additional ground for relief, not stated in her notice of appeal, i.e., that the Commission's conclusion is not supported by any finding of fact which is supported

"by competent, material and substantial evidence in view of the entire record as submitted. . . ." G.S. 62-94(b)(5). Although G.S. 62-94(c) precludes her reliance on this ground, we have considered it in connection with our consideration of appellant's contention that the Commission's conclusion is arbitrary and capricious.

Evidence before the Commission indicates that a number of the residences served by the water and sewer systems are situated on quarter-acre lots, which are of insufficient size to support both a well and septic system. The occupants of these residences, who are currently among appellant's customers, have no alternative means of water supply or sewage disposal other than the service provided by appellant. This evidence clearly supports the Commission's finding of fact that: "The customers do not have wells; some customers do not own enough land to install a septic tank." Considering the recognized importance of an adequate and safe water supply and sanitary means of sewage disposal, the Commission's finding supports a conclusion not only that appellant's services constitute a convenience to that segment of the public who use them, but also that such services are necessary to the safety and health of the public.

The words "arbitrary" and "capricious" have similar meanings, generally referring to acts done without reason or in disregard of the facts. *In re Housing Authority of Salisbury*, 235 N.C. 463, 70 S.E. 2d 500 (1952). We find nothing arbitrary or capricious in the Commission's conclusion that appellant's water and sewer services serve the public convenience and necessity.

IV

[3]  The next issue presented for our consideration concerns the denial of appellant's application for authority to abandon her public utility service. She seeks review of this portion of the Commission's order upon grounds that it is unsupported by competent evidence, is arbitrary and capricious, is in excess of the Commission's statutory authority and is in violation of constitutional provisions. We need reach none of these grounds for review because we find the order, as it addresses this issue, inadequate to permit appellate review.

(a) All final orders and decisions of the Commission shall be sufficient in detail to enable the court on appeal to determine

the controverted questions presented in the proceedings and shall include:

(1) Findings and conclusions and the reasons or bases therefor upon all material issues of fact, law, or discretion presented in the record, . . . .

N.C. Gen. Stat. § 62-79(a) (1982). This section requires the Commission to find all facts which are essential to a determination of the issues before it, in order that the reviewing court may have sufficient information to determine whether an adequate basis exists, in law and in fact, to support the Commission's resolution of the controverted issues. *Utilities Commission v. Conservation Council*, 312 N.C. 59, 320 S.E. 2d 679 (1984); *Utilities Commission v. Queen City Coach Co.*, 4 N.C. App. 116, 166 S.E. 2d 441 (1969).

Appellant based her application to discontinue service upon the following provision of G.S. 62-118(a): "Upon finding . . . that there is no reasonable probability of a public utility realizing sufficient revenue from a service to meet its expenses, the Commission shall have power . . . to authorize by order any public utility to abandon or reduce such service." The power of the Commission to authorize an abandonment of service is, in large measure, discretionary. *Utilities Commission v. Southern Railway Co.*, 254 N.C. 73, 118 S.E. 2d 21 (1961). This is so because the Commission's decision must ultimately rest on a balancing of the public's interests and the financial ability of the utility to provide service. However, the Commission's power to require the utility to continue a service is not unlimited. To require a utility, particularly a small operation such as the one involved in the present case, to continue an unprofitable operation would violate constitutional guaranties against the taking of property without just compensation. *See* F. Welch, *Cases and Text on Public Utility Regulation* 226 (rev. ed. 1968). The burden is on the utility seeking authorization to abandon service to establish "that there is no reasonable probability of its being able to realize sufficient revenue by the rendition of such service, to meet its expenses." *Utilities Commission v. Haywood Electric Membership Corp.*, 260 N.C. 59, 131 S.E. 2d 865 (1963).

In the present case, as previously summarized, appellant presented substantial evidence as to her actual expenses of operation and projected future expenses of operation, as well as the

necessity of repairs to the water tank and the estimated cost thereof. Although no evidence of the original cost of the system or accumulated depreciation of original cost previously recovered was available to her, she presented evidence of her cost of acquisition of the entire property upon which the facilities are located and estimates of replacement costs of the facilities. The Commission based its denial of appellant's application to abandon service upon its Finding of Fact 11:

> 11. The financial evidence offered by applicant fails to show that there is no reasonable probability of her realizing sufficient revenues from the utility services to meet her utility expenses.

The Commission repeated virtually the same language in its third Conclusion of Law:

> 3. The Applicant has failed to show that there is no reasonable probability of her realizing sufficient revenue to meet the expenses of the operation of the public utility water and sewer systems. . . .

Though denominated a finding of fact by the Commission, the statement contained in Finding of Fact 11 is in reality a conclusion of law in that it applies principles of law, rather than a determination of facts from the appellant's evidence, to resolve the issue. In order to review this legal conclusion, we must determine whether facts otherwise found by the Commission are sufficient to support its legal determination that appellant's evidence did not establish her entitlement to abandon service. *See Jones v. Andy Griffith Products, Inc.*, 35 N.C. App. 170, 241 S.E. 2d 140, *disc. rev. denied*, 295 N.C. 90, 244 S.E. 2d 258 (1978).

The Public Staff argues that the Commission has complied with G.S. 62-79(a)(1) because the Hearing Examiner, in his Discussion of Evidence and Conclusions in the Recommended Order, stated the reasons for his rejection of appellant's financial evidence, and the Commission adopted the Recommended Order as its Final Order. It is true that the Hearing Examiner summarized appellant's contentions as to her operating costs, depreciation expense and fair return. He rejected her evidence of operating costs because he was "unable to reproduce the calculation" and because an item of capital equipment was erroneously included in ap-

pellant's schedule of expenses for "Repairs and Maintenance." He rejected her evidence of depreciation expense because he found it "exaggerated" and because he determined that it had been improperly calculated insofar as rate-making purposes are concerned. He rejected her evidence as to fair return because he found that her contention was based upon the full purchase price of all of the property, when only a part was used for utility purposes. The Hearing Examiner's discussion of the evidence, however, does not sufficiently resolve material issues of fact to permit a determination of the controversy.

The ultimate issue for resolution is whether the operation of the system can produce sufficient revenues to meet the expenses of operation. G.S. 62-118(a). To resolve the issue, there must necessarily be findings of fact as to the reasonable expenses of operation and the revenues which the system may be reasonably expected to produce. Neither the Hearing Examiner nor the Commission made findings as to either of these material facts. Moreover, there is no indication from the findings made, or from the Hearing Examiner's Discussion of Evidence and Conclusions, that the Commission gave any consideration to appellant's evidence concerning the anticipated costs of necessary repairs to the water tank. Thus, we hold that the Commission failed to find sufficient facts to enable this Court to determine the correctness of the Commission's ruling on the controverted issue. Its failure to do so necessitates that we remand this issue for further proceedings.

In connection with our decision to remand this issue to the Commission, we note that appellant has attempted to bring to our attention, in her brief, evidence which was not before the Commission and which, according to appellant, became known to her only after the Commission acted in this matter. We have not considered this evidence, nor has the appellant attempted to proceed in accordance with G.S. 62-93 in order to present this evidence to the Commission pending appeal. Upon remand, the decision as to whether to permit the taking of additional evidence will be that of the Commission.

V

Appellant also asserts that the Commission's order that she apply for a certificate of public convenience and necessity to operate the water and sewer systems is in excess of the Commis-

sion's statutory authority and in violation of constitutional pro-
visions. While this issue may or may not arise after remand,
depending upon the Commission's findings, we choose to address
it.

N.C. Gen. Stat. § 62-110 (1982) (amended 1984) provides in
pertinent part:

> No public utility shall hereafter begin the . . . operation
> of any public utility plant or system or require ownership or
> control thereof, either directly or indirectly, without first ob-
> taining from the Commission a certificate that public conveni-
> ence and necessity requires, or will require, such . . .
> acquisition, or operation . . . .

Appellant argues that although the foregoing statute creates a
condition precedent upon the right of a person to enter the utility
business, the Commission exceeds its statutory authority by re-
quiring a person who has failed to comply with the statute to
apply for and accept a certificate of public convenience and
necessity. According to her argument, the Commission may do no
more than order her to cease and desist from operating the water
and sewer systems in violation of the statute, an order with
which she would willingly comply.

[4]   Chapter 62 of the North Carolina General Statutes confers
upon the Utilities Commission broad powers to regulate public
utilities and to compel their operation in accordance with the
policy of the State, as declared in G.S. 62-2. *Utilities Commission
v. Robert Morgan, Att'y Gen.*, 277 N.C. 255, 177 S.E. 2d 405 (1970),
*aff'd on rehearing*, 278 N.C. 235, 179 S.E. 2d 419 (1971). The status
of an entity as a public utility, entitled to the rights conferred by
the statutes and subject to the jurisdiction of the Commission,
does not depend upon whether it has secured a certificate of
public convenience and necessity, pursuant to G.S. 62-110, but is
determined instead according to whether it is, in fact, operating a
business defined by the Legislature as a public utility. *Utilities
Commission v. Carolina Telephone and Telegraph Co.*, 267 N.C.
257, 148 S.E. 2d 100 (1966). If an entity is, in fact, operating as a
public utility, it is subject to the regulatory powers of the Com-
mission notwithstanding the fact that it has failed to comply with
G.S. 62-110 before beginning its operation.

G.S. 62-30 vests the Utilities Commission with "general power and authority to supervise and control the public utilities . . . as may be necessary to carry out the laws providing for their regulation, and all such other powers . . . as may be necessary or incident to the proper discharge of its duties. G.S. 62-32(b) specifically vests the Commission "with all power necessary to *require and compel* any public utility to provide and furnish . . . reasonable service of the kind it undertakes to furnish . . . ." (Emphasis added.) G.S. 62-118(b) authorizes the Commission, specifically with respect to abandonment of water and sewer utility service without the Commission's consent, to seek injunctive relief from the superior court to compel the continued operation of such water and sewer utility services. Thus, we hold that the Commission does not exceed its statutory authority by ordering one who is, in fact, operating as a public utility to comply with laws providing for utilities regulation.

[5] However, we find redundant the Commission's order that appellant apply for a certificate of public convenience and necessity. The effect of such a certificate is to grant a utility an exclusive right to sell its service within the territory allotted to it, based upon a finding that such service would be a convenience to, and fill a need of, the public. The Commission has already made such a finding. Should the Commission again conclude, upon remand, that appellant's application to abandon service should be denied, no purpose is served by requiring appellant to apply for a certificate, the issuance of which is dependent upon a finding which the Commission has already made. Instead, the Commission should proceed to establish the territory to be served by appellant, issue the certificate (franchise), establish the rates to be charged for the services, and, if necessary, exercise its statutory powers and authority to compel compliance with its lawful orders.

[6] Neither do we agree that an order of the Commission, based upon proper findings and conclusions, requiring appellant to continue operation of her utilities would violate constitutional prohibitions against involuntary servitude. Appellant voluntarily put her land and equipment to a public use and collected compensation for the services which she provided. Having done so, the Commission may require that she continue to use it in the service to which she voluntarily dedicated it so long as she is justly compensated for such service.

Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good.

*Munn v. Illinois,* 94 U.S. 113, 126, 24 L.Ed. 77 (1877).

### VI

In summary, we affirm that portion of the Commission's Final Order holding that appellant owns and operates public utility water and sewer systems and, as such is subject to the jurisdiction of the Commission. We also affirm that portion of the Commission's Final Order holding that the public convenience and necessity are served by her operation of those systems. For the reasons previously stated, however, we vacate that portion of the Final Order denying appellant's application for authority to abandon service and remand this case to the Utilities Commission to make necessary findings upon which it may properly resolve the issue.

Affirmed in part, vacated in part, and

Remanded.

Judge BECTON concurs.

Judge WEBB dissents.

Judge WEBB dissenting.

I dissent. I do not believe Martha H. Mackie offers water and sewerage services to all who apply up to the capacity of her facilities. For this reason I would hold she does not operate a public utility.