DOCKET NO. W-1063 IN THE MATTER OF APPLICATION BY C&P ENTERPRISES, INC., POST OFFICE BOX 31563, RALEIGH, NORTH CAROLINA FOR A CERTIFICATE OF PUBLIC CONVENIENCE AND NECESSITY TO FURNISH SEWER UTILITY SERVICE IN OCEAN GLEN AND OCEAN BAY VILLAS CONDOMINIUMS IN CARTERET COUNTY, NORTH CAROLINA AND FOR APPROVAL OF RATES AND DOCKET NO. W-100, SUB 27 OCEAN GLEN TOWNHOUSE CONDOMINIUM OWNERS ASSOCIATION PHASE I, INC., AND OCEAN BAY VILLAS OWNERS ASSOCIATION, INC., PETITIONERS v. THE STATE OF NORTH CAROLINA EX REL THE NORTH CAROLINA UTILITIES COMMISSION, RESPONDENT

No. COA 96-1008

(Filed 17 June 1997)

**1. Utilities § 61 (NCI4th)— sewage treatment plant—private agreement—recognition of superior court order—denial of certificate of public convenience and necessity**

The Utilities Commission did not err in denying petitioner C&P's application for a certificate of public convenience and necessity to operate a sewage treatment plant serving condominiums where the Commission recognized a superior court order which interpreted a private agreement (Declarations of Unit Ownership) for operation of the plant and ordered petitioner C&P to transfer operation of the plant to the condominium associations, and the Commission did not make additional findings of fact.

**Am Jur 2d, Public Utilities §§ 232, 235 et seq.**

IN RE APPLICATION BY C&P ENTERPRISES, INC.

[126 N.C. App. 495 (1997)]

2. **Judgments § 300 (NCI4th)— res judicata—issue preclusion**

Issue preclusion barred the operator of a sewage treatment plant for condominiums from arguing on appeal from a Utilities Commission order issues which had previously been determined by a superior court order from which no appeal was taken and which was recognized by the Utilities Commission order.

**Am Jur 2d, Judgments §§ 539, 551.**

Appeal by C&P Enterprises, Inc. from order dated 13 February 1996 by the North Carolina Utilities Commission. Heard in the Court of Appeals 24 April 1997.

*Hunton & Williams, by Edward S. Finley, Jr., for applicant-appellant.*

*Kirkman & Whitford, P.A., by Neil B. Whitford, for Ocean Glen and Ocean Bay Villas-appellees.*

GREENE, Judge.

C&P Enterprises, Inc. (C&P) appeals the order of the North Carolina Utilities Commission (Commission) denying it a certificate of public convenience and necessity (CPCN) to operate a sewage treatment plant (Plant).

The Commission made the following pertinent undisputed findings of fact: John Pittari and William Cannon formed three corporations—C&P, Ocean Glen Development Company, Inc. (Ocean Glen), and Ocean Bay Villas Development Company, Inc. (Ocean Bay). Through Ocean Glen, Ocean Glen Condominiums (Condominiums) was established by filing a Declaration Creating Unit Ownership (Declaration). Ocean Glen constructed the Plant to serve the Condominiums. Article 13 of the Declaration provided for sewage treatment for the Condominiums. Ocean Glen conveyed on 6 October 1980 the Plant to C&P. The conveyance was subject to an agreement to provide sewage treatment services to the Condominiums. The Ocean Bay Villas Condominiums (Villas) were constructed in 1983 and granted the right to use the Plant.

In 1979 the Division of Environmental Management (DEM) issued a permit to Ocean Glen for the operation of the Plant. In 1980 C&P began operating the Plant although the permit from DEM remained with Ocean Glen until 1983. C&P operated the Plant "as a public util-

ity under G.S. 62-3," despite never having received a CPCN from the Commission and thus did so in violation of the Public Utilities Act. In 1983 Ocean Bay was issued a permit by DEM to operate the Plant. By continuing to own and operate the Plant without a DEM permit, C&P was in violation of N.C. Gen. Stat. § 143-215.1 (1996).

In November 1989 the Ocean Glen Towne House Condominium Owners' Association Phase I, Inc., and the Ocean Bay Villas Owners' Association, Inc. (Associations) filed a complaint against C&P in Carteret County Superior Court alleging that C&P "had failed to operate the [Plant] in strict compliance and conformity with North Carolina law as provided by the Declarations of Unit Ownership, and therefore . . . the Associations were entitled to [the] control of the [Plant]." The Associations further alleged that C&P had been ordered by the DEM to make improvements to the Plant that would exceed $26,000 and C&P had indicated that the Associations would be responsible for such improvements. The Associations asked that C&P bear all such costs and be ordered to transfer authority to operate the Plant to the Associations. C&P responded that the Associations had no ownership right to the Plant and that Article 13 of the Declarations required the Associations to bear the burden of paying for the improvements to the Plant.

By order of 14 August 1992 the Superior Court found that C&P was operating the Plant without a DEM permit in violation of N.C. Gen. Stat. § 143-215.1 and thus could not collect any money prior to August 1990. Subsequent to August 1990, however, pursuant to Article 13 of the Declarations, C&P could charge rates "on a pro rata basis for maintenance, upkeep and other operating costs" but could not recover costs to make the ordered improvements. In a subsequent 25 October 1993 order, the Superior Court found that C&P had been cited by DEM for violating its permit at least eight times between August 1990 and October 1993, that these violations violated Article 13 of the Declarations and the Associations were entitled to enforce Article 13 requiring transfer of the Plant to the Associations after C&P had brought the Plant into full compliance with the DEM permit.

Article 13 of the Declarations provides that C&P

shall . . . provide sewer and waste treatment services to the unit owners prior to the time it, at its option, conveys the management duties and responsibilities for said [Plant] to the [Associations], said services to entail no charges to the unit owners other than

assessments to cover all maintenance, upkeep, and other related services, including insurance. . . .

The section also requires that the operation of the Plant

shall at all times be in strict compliance and conformity with the laws of the State of North Carolina and the rules and regulations promulgated by any other controlling governmental agency and in strict compliance with the terms and conditions of any and all permits issued by said agencies.

In August 1994 the Associations moved to compel performance of the October 1993 order. The Superior Court, in a 20 March 1995 order, reiterated its mandate from the October 1993 order, that C&P bring the Plant into compliance, grant the Associations the right to operate the Plant, and that the Associations apply for a DEM permit to operate the Plant. On 25 April 1995 C&P filed an application with the Commission for a CPCN. On 25 and 26 October 1995 the Commission conducted a hearing on the application and entered its order on 13 February 1996. From its findings of fact the Commission entered the following pertinent conclusions:

1. The Commission has jurisdiction over C&P and the subject matter disposed of by this order. . . .

2. C&P is a public utility in connection with its operation of the [Plant] serving [the Condominiums] and [Villas] and is subject to the general supervisory powers of the Commission.

3. It would not be in the interest of the public for the Commission to grant a [CPCN] to C&P.

4. The interest of the public will best be served by the Associations' assuming control of the operation of the [Plant].

. . . .

7. C&P is bound by the [Declarations] for Ocean Glen to transfer authority to operate the [Plant] to the Associations as determined by the Carteret County Superior Court.

8. It is in the public interest for C&P to transfer authority to operate the [Plant] to the Associations in accordance with the Superior Court judgment.

. . . .

10. It is not in the public interest for C&P to contest the issuance of a DEM permit to the Associations to operate the facility.

. . . .

Based on its findings and conclusions the Commission denied C&P's application for a CPCN permit and ordered it to transfer authority to operate the Plant to the Associations in accordance with the October 1993 Superior Court order.

[1] The dispositive issue is whether the Commission has authority to recognize an order of the superior court construing a private agreement with respect to the operation of a sewage treatment plant. C&P argues that "reference to and deference for the judgment of the Superior Court . . . renders the Commission's order erroneous as a matter of law" because the "Complaint filed by the Associations in 1989 was improperly brought in the Superior Court, and the Court lacked subject matter jurisdiction over these issues." We disagree.

The Commission is vested with the authority to "regulate public utilities generally, their rates, services and operations." N.C.G.S. § 62-2 (Supp. 1995); *see State ex rel. Utilities Comm'n v. Mackie*, 79 N.C. App. 19, 32, 338 S.E.2d 888, 897 (1986) (Commission given broad powers to regulate public utilities), *aff'd as modified*, 318 N.C. 686, 351 S.E.2d 289 (1987). The operation of a sewage treatment system for compensation is a public utility within the meaning of the Public Utilities Act (Act). N.C.G.S. § 62-3(23)(a)(2) (1989). The authority to regulate includes the prerogative to recognize private agreements that may have been entered into between parties with respect to the operation of a public utility, as such agreements may be "in the interest of the public." N.C.G.S. § 62-2(1); *see Paper Co. v. Sanitary District*, 232 N.C. 421, 429, 61 S.E.2d 378, 384 (1950) (public utilities may enter into private contracts "free from the control or supervision of the State," if such contracts "do not impair the obligation of the utility to discharge its public duties"); *see also* 64 Am. Jur. 2d *Public Utilities* § 81, at 610 (1972) (until Commission exercises its jurisdiction the parties are free to contract with respect to matters within the exclusive jurisdiction of the Commission). Of course the Commission is not required to recognize these private agreements and such contracts are subject to modification or abrogation upon a showing that the contracts do not serve the public welfare. *Id.* Until modified or abrogated by the Commission, these contracts are enforceable in the courts. *Id.*

In this case the parties entered into private agreements with regard to the ownership and operation of a sewage treatment plant and no one sought the approval of the Commission. A dispute arose with regard to these contracts and those disputes were addressed in the Superior Court. After the matter was addressed by the Superior Court, C&P filed an application seeking a CPCN, thus bringing the matter to the attention of the Commission. The Commission concluded it had jurisdiction, the operation of the Plant was within the scope of its "general supervisory powers" and it served the public interest to recognize the private agreements as construed by the Superior Court. This action by the Commission was well within its authority. Having made the determination to recognize the Superior Court's order to transfer the operation of the Plant to the Associations, the Commission was not required to make any additional findings of fact justifying the rejection of C&P's application for a CPCN.

**[2]** C&P makes the additional argument that there is no language in the Declarations that would require or even allow a transfer of the operations of the Plant to the Associations. Additionally, by requiring such transfer, while it retains ownership over the land and facilities, C&P argues it is "without any ability to receive compensation from the users of the [Plant] for" capital improvements, general repairs and other costs. These were matters before the Superior Court, no appeal was entered from that order, and the Commission chose to recognize the order of the Superior Court. Therefore C&P is precluded from arguing these issues in this appeal. *See County of Rutherford ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 74, 394 S.E.2d 263, 265 (1990) ("issue preclusion" prevents the same parties from relitigating an issue that has been previously determined).

Affirmed.

Judges WYNN and TIMMONS-GOODSON concur.