STATE ex rel. UTILS. COMM'N v. CAROLINA WATER SERV., INC.

[165 N.C. App. 163 (2004)]

———————————

STATE OF NORTH CAROLINA ex rel. Utilities Commission, Ocean Club Ventures, L.L.C., Complainant v. CAROLINA WATER SERVICE, INC. OF NORTH CAROLINA, Respondent v. MONTERAY SHORES, INC. and ROBERT R. AND LAURIE T. DeGABRIELLE, Intervenors

No. COA03-896

(Filed 6 July 2004)

**1. Utilities— standing—aggrieved party**

Appellant-intervenor company has standing to bring this appeal because subjecting the company to the Utility Commission's jurisdiction impacts the company's legal rights, and therefore, the company is an aggrieved party.

**2. Utilities— resignation of commissioner—no prejudicial error**

Although the Utilities Commission erred by entering an order when one of the commissioners on the panel had resigned at the time it was reduced to writing and filed, this error was not prejudicial to appellant-intervenor company because appellant requested a hearing before the full Commission as relief, and a majority of the full Commission has already ruled on the case and would be counted to vote with their prior orders in accord with the final decision pursuant to the pertinent section of N.C.G.S. § 62-76(c).

**3. Utilities— standing—burden of proof**

The Utilities Commission did not err by determining that complainant company had standing to prosecute the case and met their burden of proof, because: (1) the company had a direct interest in the subject matter in that it was, at the time of the complaint, the owner of one phase of the land in question and under an option contract with respect to the remaining portion of the land; (2) the company complained as a result of the omission of the public utility to provide water and sewer services for the purpose of developing the land; and (3) appellant abandoned the issue of burden of proof by failing to argue it in the brief as required by N.C. R. App. P. 28(b)(6).

**4. Utilities— public utility—collection of tap fees—offering special service to residents**

The Utilities Commission did not err by determining that appellant-intervenor company was a public utility, because: (1) collection of tap fees constitutes compensation under N.C.G.S. § 62-3(23)a; and (2) offering service to all of its residents satisfies the definition of "public" within the statute and cases.

**5. Utilities— franchise—contiguous extension**

The Utilities Commission did not err by determining that water and sewer was provided in the pertinent planned unit development as a result of a contiguous extension of the pertinent franchise and that Corolla Shores was within the franchise area held by respondent public utility, because: (1) appellant-intervenor company constructed the facility as an agent of respondent public utility; and (2) taking the Commission's findings as prima facie just and reasonable, there was no evidentiary basis upon which to overturn its decision.

**6. Utilities— contract not in public interest—modification**

The Utilities Commission did not err by determining that the contract between appellant-intervenor and respondent public utility was not in the public interest and could be modified by the Commission under N.C.G.S. § 62-2(b).

Appeal by the intervenors from the final decision of the Utilities Commission dated 19 December 2002. Heard in the Court of Appeals 17 March 2004.

STATE EX REL. UTILS. COMM'N v. CAROLINA WATER SERV., INC.

[165 N.C. App. 163 (2004)]

*Public Staff Chief Counsel Antoinette R. Wike and Staff Attorney Elizabeth Denning Szafran for the complainant-appellee North Carolina Utilities Commission.*

*Hunton & Williams, by Edward S. Finley, Jr. for respondent-appellee Carolina Water Service, Inc.*

*John S. O'Connor, Attorney for intervenor-appellants Monteray Shores, Inc. and the DeGabrielles.*

ELMORE, Judge.

For the full facts of the case we reference the opinion of this Court rendered in the related case, *State ex rel. Utilities Commission v. Buck Island*, COA03-198, filed 17 February 2004. In addition to the facts related therein, we note that between the decision and the written order here appealed being given by the panel of the Utilities Commission, Commissioner William Pittman, a member of the panel, resigned.

Carolina Water Service (CWS), is a public utility who provides sewer and water service. Monterey Shores, Inc. (MSI), is a real estate developer owned by the DeGabrielles. MSI is the developer of Monterey Shores, a planned unit development (PUD) in Currituck County, which was serviced by CWS because it was adjacent to Corolla Light, another PUD for which CWS held a utilities franchise. Ocean Club Ventures (OCV), the complainant, is the real estate developer of Corolla Shores, which was originally intended as the third phase of Monterey Shores. Corolla Shores is located directly north of Monterey Shores, and directly south of Corolla Light. Buck Island is a PUD located to the south of Monterey Shores, and developed by Ships Watch, Inc.

OCV filed a complaint with the North Carolina Utilities Commission (the Commission) for water and sewer service from CWS. CWS responded that MSI is the proper one to provide such approval for service, because of their former agreement. MSI intervened and was ordered by the Commission to allow expansion of service to OCV's land. MSI brings this appeal.

I.

Our review of final decisions of the Utilities Commission is guided by the standard mandated by section 62-94 of the General Statutes, which states in pertinent part:

STATE ex rel. UTILS. COMM'N v. CAROLINA WATER SERV., INC.

[165 N.C. App. 163 (2004)]

(a) On appeal the court shall review the record and the exceptions and assignments of error in accordance with the rules of appellate procedure, and any alleged irregularities in procedures before the Commission, not shown in the record, shall be considered under the rules of appellate procedure.

(b) . . . The court may affirm or reverse the decision of the Commission . . . if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions or decisions are:

(1) In violation of constitutional provisions, or

(2) In excess of statutory authority or jurisdiction of the Commission, or

(3) Made upon unlawful proceedings, or

(4) Affected by other errors of law, or

(5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted, or

(6) Arbitrary or capricious.

(c) In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by any party and due account shall be taken of the rule of prejudicial error. The appellant shall not be permitted to rely upon any grounds for relief on appeal which were not set forth specifically in his notice of appeal filed with the Commission.

N.C. Gen. Stat. § 62-94 (2003).

On appeal, findings of fact made by the Utilities Commission are considered *prima facie* just and reasonable. N.C. Gen. Stat. § 62-94(e) (2003). This means that the Court "may not replace the Commission's judgment with its own when there are two reasonably conflicting views of the evidence." *State ex rel. Utilities Comm. v. Public Staff*, 123 N.C. App. 43, 46, 472 S.E.2d 193, 196 (1996); *State ex rel. Utilities Comm'n v. Buck Island*, 162 N.C. App. 568, 575, 592 S.E.2d 244, 249 (2004).

The appellant brings three main issues on appeal, and the appellees bring objections based on standing and preservation of the appellant's issues in response. We consider the issues in turn, reserving determination of the preservation issue.

## II.

**[1]** The appellees first argue that the appellant Monterey Shores, Inc. (MSI) has no standing to bring this appeal in that they are not an aggrieved party. This issue was also raised in the related case referenced above against there appellant Buck Island, Inc. We conclude in concert with that opinion that MSI does have standing to bring this appeal because subjecting MSI to the Commission's jurisdiction impacts MSI's legal rights, and therefore MSI is an aggrieved party. *See State ex rel. Utils Comm'n v. Buck Island,* 162 N.C. App. 568, 573-74, 592 S.E.2d 244, 248 (2004).

## III.

**[2]** The first substantive issue brought by the appellant MSI is whether the panel erred in entering an order when one of the commissioners on the panel, Commissioner Pittman, had resigned at the time it was reduced to writing and filed. Assuming this issue to be properly preserved, we conclude that the panel did err, but without prejudice to the appellant.

Section 62-77 of our General Statutes requires that final orders of the Commission be reduced to writing in order to take effect. Commissioner Pittman had resigned by the time the order in question was reduced to writing, and thus the appellant argues that it was ineffective. Appellant argues that because he was not a current member of the Commission, he had no authority to participate in or sign the order, citing the case of *In re Pittman,* 151 N.C. App. 112, 564 S.E.2d 899 (2002). In the *Pittman* case, this Court vacated and remanded the order of a district court judge who signed the order after her term had ended. We, however, do not reach consideration of this argument, because the appellant's argument is settled by the statute itself.

Section 62-76(c) of the General Statutes states:

> In all cases in which a pending proceeding shall be assigned to a hearing commissioner, such commissioner shall hear and determine the proceedings and submit his recommended order, but, in the event of a petition to the full Commission to review such recommended order, the hearing commissioner shall take no part in such review, either in hearing oral argument or in consideration of the Commission's decision, but his vote shall be counted in such decision to affirm his original order.

N.C. Gen. Stat. § 62-76(c) (2003).

STATE ex rel. UTILS. COMM'N v. CAROLINA WATER SERV., INC.

[165 N.C. App. 163 (2004)]

The appellant has requested a hearing before the full Commission as relief. The record indicates that through the life of this case before the Commission, four of the seven current Commissioners heard evidence in this case, and that all ruled unanimously on their respective orders. Thus a majority of the full Commission has already ruled on the case and would be counted to vote with their prior orders according to the above quoted section of the statute. There is therefore no prejudice demonstrated by the appellant from Commissioner Pittman's signing of the order, since a majority of the current Commission is already bound by prior orders regardless of Commissioner Pittman's decision.

This decision of the Court should in no way be construed as a green light to the Commission to commit any future procedural irregularities. It is because a majority of the Commission has already heard evidence and voted in accord with the final decision that we are compelled not to send the case back to the full Commission. However, this decision will not be applicable in cases where the facts are not identical, and where an appellant has been prejudiced. Because there was no prejudice on this issue, we will not discuss the preservation issue raised by the appellees.

IV.

[3] The appellant next brings the issue of whether the panel erred in determining that the complainant (Ocean Club Ventures, or OCV) had standing to prosecute the case and met their burden of proof. We conclude that the panel did not err.

The only authority cited by the appellant in support of this assignment of error is section 62-73 of the General Statutes, which states in pertinent part:

Complaints may be made by the Commission on its own motion or by any person having an interest, either direct or as a representative of any persons having a direct interest in the subject matter of such complaint by petition or complaint in writing setting forth any act or thing done or omitted to be done by any public utility, including any rule, regulation or rate heretofore established or fixed by or for any public utility in violation of any provision of law or of any order or rule of the Commission, or that any rate, service, classification, rule, regulation or practice is unjust and unreasonable. . . .

N.C. Gen. Stat. § 62-73 (2003).

OCV had a direct interest in the subject matter in that it was, at the time of the complaint, the owner of one phase of the land in question (referred to as Corolla Shores or Monterey Shores Phase III) and under an option contract with respect to the remaining portion of the land. OCV complained as a result of the omission of the public utility, Carolina Water Service, to provide water and sewer service for the purpose of developing the land. OCV attached a copy of its warranty deed to "section 1" of the land in question to the original complaint. Because of this direct interest, OCV had standing to bring the complaint.

As to burden of proof, that issue is not argued in the appellant's brief, and is therefore deemed abandoned under Rule of Appellate Procedure 28(b)(6) (2004).

V.

[4] The final issue raised on appeal is whether the panel erred in determining that MSI was a public utility, that water and sewer was provided in Monterey Shores as a result of a contiguous extension of the Corolla Light franchise, that Corolla Shores was within the franchise area of Carolina Water Service (CWS), and that the contract between MSI and CWS was not in the public interest and could be modified by the commission. For the same reasons that Buck Island was considered a pubic utility in the *Buck Island* case, we conclude that the panel did not err.

First, the issue of MSI being deemed a public utility parallels Buck Island's claim in the related appeal. A public utility is defined in N.C. Gen. Stat. § 62-3(23)a:

a. "Public utility" means a person, whether organized under the laws of this State or under the laws of any other state or country, now or hereafter owning or operating in this State equipment or facilities for:

. . .

2. Diverting, developing, pumping, impounding, distributing or furnishing water to or for the public for compensation, or operating a public sewerage system for compensation . . .

N.C. Gen. Stat. § 62-3(23)a (2003).

Appellant's argument focuses on the language in the statute saying a public utility provides water and sewer service for compensa-

tion, arguing that they do not receive compensation for the service they provide. The *Buck Island* decision stated:

> [T]he statute does not require the sale of utility service, only that utility service is furnished "to or for the public for compensation." N.C. Gen. Stat. § 62-3(23)a.2 (2003). Evidence of the tap fees received by Buck Island is substantial, competent, and material evidence supporting the Commission's conclusion that appellant receives compensation for the utility services.

*State ex rel. Utilities Commission v. Buck Island*, 162 N.C. App. 568, 577, 592 S.E.2d 244, 250 (2004).

Appellant admits on appeal that both Buck Island and Monterey Shores collect tap fees. This constitutes compensation under the statute.

Appellant also argues that they do not hold the service out to the general public. Our Court has previously stated with respect to public utilities that "[o]ne offers service to the 'public' within the meaning of the statute when he holds himself out as willing to serve all who apply up to the capacity of his facilities. It is immaterial, in the connection, that his service is limited to a specified area and his facilities are limited in capacity." *State ex rel. Utilities Comm. v. Mackie*, 79 N.C. App. 19, 25-26, 338 S.E.2d 888, 893-94 (1986). Appellant admits on appeal offering service to all of their residents. This satisfies the definition of "public" within the statute and cases.

[5] Next appellant argues that the panel erred in determining that water and sewer were provided in Monterey Shores as a result of a contiguous extension of the Corolla Light franchise, and that Corolla Shores was within the franchise area held by CWS.

Usually, a Certificate of Convenience and Necessity is required when a public utility begins construction or operation. *See* N.C. Gen. Stat. § 62-110(a). The only exception in the statute is for "construction into territory contiguous to that already occupied and not receiving similar service from another public utility, [or . . .] construction in the ordinary conduct of business." N.C. Gen. Stat. § 62-110(a) (2003). This construction is what is referred to as a contiguous extension.

Through no fault of MSI, no certificate was filed in this case, and thus MSI and Buck Island were within the franchise area of CWS because of a contiguous extension, which requires that the area be

STATE ex rel. UTILS. COMM'N v. CAROLINA WATER SERV., INC.

[165 N.C. App. 163 (2004)]

immediately adjacent to the original franchise area, Corolla Light. Corolla Shores is located between MSI and Corolla Light, and the two connect only through Corolla Shores. Corolla Shores is within the contiguous extension, and is necessary to continue as such in order for MSI to remain in the franchise granted to CWS.

As noted above, findings of fact made by the Utilities Commission are considered *prima facie* just and reasonable on appeal. N.C. Gen. Stat. § 62-94(e) (2003). The role of the appellate court is to determine, after reviewing the entire record, "whether . . . the Commission's findings and conclusions are supported by substantial, competent, and material evidence." *State ex rel. Utilities Comm. v. Piedmont Nat. Gas Co.*, 346 N.C. 558, 569, 488 S.E.2d 591, 598 (1997). However, the Court "may not replace the Commission's judgment with its own when there are two reasonably conflicting views of the evidence." *State ex rel. Utilities Comm. v. Public Staff*, 123 N.C. App. 43, 46, 472 S.E.2d 193, 196 (1996); *Buck Island*, 162 N.C. App. at 575, 592 S.E.2d at 249.

MSI relies on language in the statute which emphasizes "construction," asserting that because CWS did not construct the facilities it did not extend a contiguous extension of Corolla Light. However, the Commission found as fact that MSI constructed the facility as an agent of CWS because in the agreement reached between CWS and MSI and Ships Watch, MSI and Ships Watch agreed to construct the facilities and not turn over ownership to CWS in order to avoid increasing CWS's federal tax burden. This technical distinction in who constructed the facility would not seem to defeat the fact that the facility was constructed for the express purpose of allowing CWS to provide utility service to MSI's entire area, which originally included what later came to be known as Corolla Shores, the subject of this assignment of error. The Commission's 20 March 2001 order noted that if this arrangement was not construed as a contiguous extension merely because MSI constructed the physical facility, then that would mean "that no contiguous extension could ever occur unless the utility directly installed all facilities in the newly franchised area, a result which is simply inconsistent with the manner in which water and sewer utilities operate in North Carolina."

This finding by the Commission is supported by the substantial, competent, and material evidence. The agreement between CWS and MSI is included in the record as an appendix to the complaint. This agreement vests ownership of the "main facilities" in CWS, while MSI

retains ownership of the land, which it leases to CWS, and of the "backbone facilities." CWS agreed to pay all expenses of operation and maintenance of the facilities, as well as to assist in future expansion. From the agreement, the facilities appear to have been constructed for the purpose of providing water and sewer service, which service was provided by CWS. Because construction was not complete at the time of the agreement, it seems that the facilities were completed in order to connect with the existing CWS franchise. Taking the Commissions findings as *prima facie* just and reasonable, we find no evidentiary basis upon which to overturn the Commission's decision.

**[6]** Lastly, the appellant argues that the Commission erred in determining that the contract between MSI and CWS was not in the public interest and could be modified by the Commission. Section 62-2(b) of the General Statutes gives the Commission authority to regulate the services and operations of public utilities, including the right to modify or abrogate private agreements between parties with respect to the operation of a public utility, "upon a showing that the contracts do not serve the public welfare." *State ex rel. Utils. Comm'n v. Carolina Water Serv., Inc.*, 149 N.C. App. 656, 657, 562 S.E.2d 60, 62 (2002); *Buck Island, supra.*

Appellant argues that the contract modification was in error because there was no contiguous extension, since the modification was to allow CWS to extend service to the franchise area. Because we determined above that the Commission did not err in finding that there was a contiguous extension, this argument no longer applies.

Having reviewed the record and the arguments of the parties, we affirm the panel of the Commission.

Affirmed.

Judges McCULLOUGH and BRYANT concur.